Merrimack
No. 88-184

THE STATE OF NEW HAMPSHIRE

v.

DANIEL TAYLOR

November 13, 1989

*John P. Arnold,* attorney general (*John S. Davis,* assistant attorney general, and *Mark E. Howard,* attorney, on the brief, and *Mr. Davis* orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant was convicted of driving while under the influence of intoxicating liquor, subsequent offense, after a two-day jury trial. RSA 265:82, I(a) (Supp. 1988). On appeal he argues that the Trial Court's (*Dickson,* J.) instruction to the jury that his blood alcohol level of .13 percent was prima facie evidence that he was driving under the influence of intoxicating liquor was in error. The defendant contends that since his blood alcohol content was tested approximately one hour and fifteen minutes after he was arrested, the test results do not accurately reflect his blood alcohol content at the time he was operating his vehicle. We hold the instruction was proper and affirm.

Officer Bryan Neal of the Concord Police Department was on routine patrol on May 2, 1987, when, at approximately 12:25 a.m., he observed the defendant's small pickup truck traveling on North State Street at a fairly slow rate of speed for the time of day and the traffic conditions. After the vehicle passed the officer he noted through his rear view window that the vehicle was hugging the right side of the road as if it was beginning to pull over to the side of the road. Seeing this, the officer turned his vehicle around and approached the defendant's vehicle with the intent to offer assistance.

Since the defendant's vehicle came to a stop partially in the roadway, Officer Neal activated his blue lights as he stopped in order to protect the safety of the operator and himself. The defendant immediately exited his vehicle, approached the officer and spontaneously exclaimed, "I know I only had two beers, but I feel too drunk to drive and I won't drive anymore."

The officer asked the defendant his name and date of birth, but the officer noted that he appeared confused and dazed. He failed to give the officer his date of birth. The officer then conducted the standard field sobriety tests, which indicated sufficient impairment for the arrest of the defendant for DWI at 12:34 a.m. During the tests the officer also noted that the defendant's speech was slurred and that his eyes were glassy and red.

As the defendant was being transported in the police cruiser to the Concord police station, Officer Neal detected a strong odor of alcohol. Upon arrival at the station, the defendant was placed in a holding cell until a certified intoximeter operator could be called to administer the blood alcohol test. Officer Neal, based on the field sobriety tests and observations of the defendant, gave the opinion that the defendant "was unfit to drive the motor vehicle." Hence, on the testimony of the officer alone, a reasonable jury could have found the defendant guilty of DWI.

Officer Lionel Talbot, a certified intoximeter operator, then came to the station to conduct a test of the defendant's blood alcohol. He performed the test following the mandated twenty-minute waiting period during which the officer could observe the defendant. *See* N.H. ADMIN. RULES, He-P 2206.02. The police station was apparently busy on the evening in question. At 1:38 a.m. the test was conducted, and it indicated that the defendant's blood alcohol content was .13 percent.

The defendant was charged with driving "[w]hile ... under the influence of intoxicating liquor ...." RSA 265:82, I(a) (Supp. 1988). In order to convict a person under this provision, the State need not prove that the defendant's blood alcohol content was .10 percent or more at the time he was operating his vehicle, *see* RSA 265:82, I(b) (Supp. 1988), but need only prove impairment to any degree. *State v. Slater*, 109 N.H. 279, 280, 249 A.2d 692, 694 (1969). A two-day jury trial was held. Following the close of the evidence and the arguments, the trial court gave the following charge to the jury:

> "During the course of the trial, you heard evidence that a chemical test was conducted for the purpose of determining the alcoholic content of the defendant's blood at the time the test was performed. You have heard evidence that the test yielded a result of .13. . . . [E]vidence that there was ten one-hundredths percent or more by weight of alcohol in the defendant's blood is what we call prima facie evidence that the defendant was under the influence of

intoxicating liquor. What does that mean? Prima facie evidence is, simply, evidence which, standing alone, is enough for you to find that the defendant was under the influence of alcohol. However, simply because the test result was over .10 does not require you to find that the defendant was under the influence of alcohol. Evidence that there was a certain percent by weight of alcohol in the defendant's blood is not conclusive, but should be considered by you along with other evidence in deciding whether or not the defendant was operating under the influence of intoxicating liquor."

An instruction relating to the prima facie evidentiary value of a test result is specifically provided for under RSA 265:89 (Supp. 1988), which provides in part:

*"Evidence.* Upon complaint, information, indictment or trial of any person charged with the violation of RSA 265:82 or 82-a, the court may admit evidence of the amount of alcohol in the defendant's blood at the time alleged, as shown by a test of his breath, blood, or urine as provided in RSA 265:84. Evidence that there was, at the time alleged, 5/100 percent, or less, by weight of alcohol in his blood is prima facie evidence that the defendant was not under the influence of intoxicating liquor. Evidence that there was, at the time alleged, more than 5/100 percent and less than 10/100 percent by weight of alcohol in his blood is relevant evidence but is not to be given prima facie effect in indicating whether or not the defendant was under the influence of intoxicating liquor; but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant. Evidence that there was, at the time alleged, 10/100 percent or more by weight of alcohol in his blood is prima facie evidence that the defendant was under the influence of intoxicating liquor."

The defendant objects to the trial court's instruction because, as the record demonstrates, the defendant's driving occurred approximately one hour and fifteen minutes before the test was administered, and hence the State failed to establish a temporal nexus between the alcohol in the defendant's blood at the time he was operating the vehicle and the defendant's level of blood alcohol at the time of the test. The defendant focuses his argument on the words in RSA 265:89 (Supp. 1988), "at the time alleged," which he argues refer to the time of the offense, and on the evidence offered

by Officer Talbot that the measure of blood alcohol increases, after consumption, for a period of approximately one hour to an hour and fifteen minutes. This increase of alcohol in the blood after consumption for a period of time, and then the decrease of alcohol in the blood thereafter, is known as the "blood alcohol curve." The defendant, in effect, contends that the State must prove the amount of alcohol in his blood when he was operating his vehicle in order for the trial court to give the instruction relative to prima facie evidence. We disagree.

RSA 265:89 (Supp. 1988) provides that evidence of a .10 percent or greater blood alcohol content "at the time alleged" is prima facie evidence that the defendant was under the influence of alcohol. We agree with the defendant that the phrase "at the time alleged" refers to the time of the offense alleged in the complaint, which was the time the defendant was operating the motor vehicle while under the influence of alcohol. However, the statute's use of the phrase "at the time alleged" does not require us to hold that the State was required to prove that the defendant had a .10 percent or greater blood alcohol content at the precise time he was driving, before the instruction as to prima facie evidence could be given.

 Although RSA 265:89 (Supp. 1988) employs the phrase "at the time alleged," we interpret a statute so as not to produce an illogical result. *Kalloch v. Board of Trustees*, 116 N.H. 443, 445, 362 A.2d 201, 203 (1976). We also examine a statute in relation to the statutory scheme. *Hall v. Brusseau*, 100 N.H. 87, 89, 119 A.2d 703, 704 (1956) (all parts of an act construed together). With these principles in mind, we conclude that RSA 265:89 (Supp. 1988) does not require the State to demonstrate a conclusive nexus between the test result and the defendant's blood alcohol content at the precise time he was driving, before the test can be admitted as prima facie evidence that the defendant was intoxicated while driving. It is impossible as a practical matter for a test to reflect a defendant's exact blood alcohol content at the precise time he was driving, as there is necessarily some lag time between the driving and the administration of the test, during which the officer determines whether a test is necessary, and, if so, secures the driver's car and transports the driver to the test location. Furthermore, both the statute and the administrative rules pertaining to the administration of the tests for blood alcohol content require the passage of time both explicitly and implicitly. For example, He-P 2206.02 requires that before a breath test may be performed, the "subject . . . [must] be observed for a period of 20 minutes to ensure the integrity of the sample." N.H. ADMIN.

RULES, He-P 2206.02. In order to conduct a blood test for blood alcohol content, a health care provider is necessary to "withdraw [the] blood for the purpose of [the] test." RSA 265:85, I (Supp. 1988). Common sense indicates that the defendant may, on many occasions, have to wait for a reasonable period of time for a certified intoximeter operator to arrive at the police station to take a breath test, or for a certified health care provider to arrive at a medical facility to take a blood test. These delays are unavoidable, given the procedures established to secure accurate test results, a goal that is desired by defendants and the State alike.

Since a test cannot reflect a defendant's blood alcohol content at precisely the moment he was driving, were we to follow the defendant's reasoning, no test could ever be prima facie, or stand alone as, evidence of intoxication at the time of driving, since the State would always be required to present further evidence to prove a nexus between the test result and the defendant's blood alcohol content at the moment he was driving. Such a result is contrary to RSA 265:89 (Supp. 1988), which allows for evidence of blood alcohol content above a certain level, "shown by a test of . . . breath, blood or urine," to be considered prima facie evidence of intoxication.

Therefore, we reject the defendant's contention and interpret the phrase "at the time alleged" to allow a test exhibiting a blood alcohol content of .10 percent or greater, taken within a reasonable period following the defendant's operation of the motor vehicle, to be prima facie evidence of the defendant's intoxication while operating the motor vehicle. We hold that the approximate one hour and fifteen minute delay between the defendant's operation of the motor vehicle and the test, which yielded a blood alcohol content of .13 percent, was such a reasonable period of time. The court therefore properly gave the instruction as to prima facie evidence.

The defendant, however, makes much of Officer Talbot's testimony as to the existence of a blood alcohol curve. The fact that the test was administered approximately one hour and fifteen minutes after the defendant's operation of the motor vehicle, however, goes to the weight to be accorded to the test by the trier of fact. See State v. Gallant, 108 N.H. 72, 74, 227 A.2d 597, 598 (1967). The trial court properly instructed the jury that the .13 percent test result was a showing of the defendant's blood alcohol content "at the time the test was performed." The court also correctly charged that the test result should not be considered conclusive, "but should be considered by you along with other

evidence in deciding whether or not the defendant was operating under the influence of intoxicating liquor."

The defendant argues that the State should provide the jury with evidence of the defendant's blood alcohol at the time he was driving by extrapolating such evidence from the results of the blood alcohol test taken at the police station. There are two reasons why this could place an impossible burden upon the State. First, it is conceded by the State and the defendant that a driver's blood alcohol content increases for a period of time after consumption and then begins to decrease as the alcohol is eliminated, principally through metabolism. *See* 2 D. NICHOLS, DRINKING/DRIVING LITIGATION § 23:01 (1985). Extrapolation, however, requires evidence that the State will rarely be able to acquire because of the defendant's constitutional right to remain silent. Extrapolation requires evidence as to when, and in what amounts, the defendant consumed the alcohol prior to driving. Without this information, which is wholly within the defendant's knowledge in the vast majority of cases, extrapolation of blood alcohol content back to the time of driving becomes an impossible task. The legislature could not have intended to place such an impossible burden on the State.

Second, even if the State were able to obtain evidence as to the exact time and the precise amount of alcohol consumed by the defendant prior to his driving, conclusive evidence of the blood alcohol content at the time of driving could still not be offered to the jury in the guise of a general rule because the rate of absorption of alcohol varies considerably between individuals. One study found that the peak blood alcohol level is reached, after consumption, in anywhere from 14 to 138 minutes. NICHOLS, *supra* § 23:05 (Supp. 1989). The extrapolation evidence is further complicated by the amount of food consumed by the defendant at the time he consumes alcohol, which affects the rate of absorption. NICHOLS, *supra* § 23:06. This evidence is, again, wholly within the knowledge of the defendant. The legislature could not have intended to place such impossible roadblocks in the way of the State in prosecuting DWI cases.

■ This case presents a complex issue of statutory construction. However, we have consistently interpreted statutes so as to "effectuate their evident purpose." *State v. Sweeney*, 90 N.H. 127, 128, 5 A.2d 41, 42 (1939). We now hold that where the police obtain a blood alcohol sample within a reasonable period of time after driving occurs, the results of that test may be admitted as prima facie evidence of intoxication. The jury will then be free to give what weight they determine is appropriate to such prima facie

evidence in determining whether the defendant is guilty or innocent of driving while under the influence of intoxicating liquor.

While the issue of a *per se* violation under RSA 265:82, I(b) (Supp. 1988) and RSA 265:82-a, II and III (Supp. 1988) is not squarely before us, we nevertheless conclude that the same reasoning which applies to a DWI prosecution under RSA 265:82, I(a) applies with equal force to a prosecution under the *per se* statutes. Hence, the State may present evidence of breath or blood tests taken within a reasonable period of time after driving occurs to indicate the presence of blood alcohol necessary for a conviction. This evidence will be evidence of guilt if it exceeds the statutory minimum. Once again, the jury may accept or reject this evidence in determining the ultimate guilt or innocence of the defendant.

*Affirmed.*

All concurred.