## PEOPLE v CAMPBELL

Docket No. 212907. Submitted May 20, 1999, at Marquette. Decided July 2, 1999, at 9:10 A.M.

Lawrence J. Campbell was charged in the 96th District Court with operating a motor vehicle while under the influence of intoxicating liquor after a test of his blood approximately two hours and twenty-four minutes after he had an accident while driving an automobile indicated that his blood contained 0.27 grams of alcohol per one hundred milliliters. The defendant moved to suppress evidence of the test result. The court, James M. Collins, J., denied the motion. The Marquette Circuit Court, John R. Weber, J., granted the defendant's delayed application for leave to appeal, vacated the district court order denying the defendant's motion to suppress, and remanded the case for an evidentiary hearing regarding the reasonableness of the time lapse between the defendant's accident and the blood test. The circuit court concluded that the time lapse was too long for the test result to be considered reflective of the defendant's blood alcohol content at the time of the accident, at least without expert testimony supporting such a conclusion. The prosecution appealed by leave granted.

The Court of Appeals *held*:

1. MCL 257.625a; MSA 9.2325(1), the statute that makes the result of a chemical test of a motorist's blood admissible evidence to be considered in the determination of the motorist's guilt or innocence of a drunken driving offense, and that provides for a presumption that the motorist was under the influence of intoxicating liquor if the test indicates 0.10 grams of alcohol per one hundred milliliters of blood, does not require the prosecution to extrapolate the test results back to the time of the alleged drunken driving offense. The circuit court in this case erred in requiring such extrapolation.

2. Evidence of the result of a chemical test of a motorist's blood must be admitted if it is relevant, i.e., it has any tendency to show that the motorist was more probably or less probably intoxicated when driving, and if its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Delay

between the time of the offense and the time of testing affects the relevancy of the evidence and the weight to be accorded to it by the trier of fact. In this case, the delay between the time of the alleged drunken driving offense and the time of the defendant's blood test was not so long that it can be said that the test result did not have some tendency to make the fact of the defendant's intoxication at the time of the accident more or less probable. The test result was relevant to the case, and the district court properly denied the defendant's motion to suppress.

Circuit court order reversed; district court order reinstated; case remanded for further proceedings.

INTOXICATING LIQUORS — OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUOR — EVIDENCE — BLOOD TESTS.

The result of a chemical test of a motorist's blood for alcohol content following an arrest for operating a motor vehicle while under the influence of liquor need not be extrapolated back to the time of the alleged offense and must be admitted into evidence during the prosecution of the motorist if it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence; delay between the time of the alleged offense and the time of testing affects the relevancy of evidence of the test result and the weight to be accorded to such evidence by the trier of fact (MCL 257.625a; MSA 9.2325[1], MRE 401, 402, 403).

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *Gary L. Walker,* Prosecuting Attorney, and *Terrence E. Dean,* Civil Counsel, for the people.

*James E. Nancarrow, P.C.,* (by *George W. Hyde, III*), for the defendant.

Before: WHITBECK, P.J., and MARKMAN and O'CONNELL, JJ.

MARKMAN, J. The prosecutor appeals by leave granted an order by which the circuit court vacated a district court order denying defendant's motion to suppress blood alcohol test results and remanded

defendant's case to the district court for an evidentiary hearing regarding whether the test results were reflective of defendant's blood alcohol level at the time of his offense. The circuit court concluded that the prosecutor had failed to provide evidence to show that the results of the blood test were probative of defendant's blood alcohol level at the time of the offense given the length of the delay between the offense and the test. We reverse the circuit court order and reinstate the district court order denying defendant's motion to suppress.

On August 4, 1997, defendant was in a one-car automobile accident in Powell Township, Marquette County. The regional dispatch office received a call regarding the accident at 10:54 P.M., and Michigan State Police Trooper Dale Hillier was dispatched to the scene at 11:14 P.M. According to Trooper Hillier, he arrived at the accident scene between 11:45 P.M. and midnight. By the time he arrived, defendant had been taken to a doctor's office at the nearby Huron Mountain Club. Apparently, another police officer arrived at the accident scene before Trooper Hillier, retrieved defendant from the doctor's office, and brought him to the scene of the accident at approximately 12:20 A.M. Trooper Hillier testified that defendant denied having ingested any alcohol after the accident. Defendant was arrested at 12:42 A.M. for operating a vehicle while under the influence of intoxicating liquor (OUIL), MCL 257.625(1); MSA 9.2325(1). He was taken by patrol car to the hospital, approximately thirty miles from the accident, to have his blood drawn. Defendant had two vials of blood drawn by hospital personnel at 1:18 A.M. Test results showed a

blood alcohol content of 0.27.[1] Defendant was later charged with OUIL.

Defendant filed a motion to suppress the results of the blood test. The district court denied the motion, stating:

> Well, I think that some of the time was lost here because of the distances involved, and the officers, from the time that they apparently got him and placed him under arrest, it took about thirty-six minutes for them to get the test taken at the hospital. I feel that they have acted just as expeditiously as they could, and I am going to deny your motion to suppress.

Defendant then filed a delayed application for leave to appeal in the circuit court. Leave was granted, and, in an opinion issued on June 18, 1998, the circuit court vacated the district court order denying defendant's motion to suppress, and remanded for an evidentiary hearing regarding the issue of the reasonableness of the time lapse between defendant's accident and the drawing of defendant's blood. The circuit court concluded that the time lapse was too long for the test results to be considered the equivalent of defendant's blood alcohol content at the time of the accident, at least without expert testimony supporting such a conclusion.

The decision whether to admit evidence is within the sound discretion of the court. *People v Hanna*, 223 Mich App 466, 476; 567 NW2d 12 (1997). Similarly,

---

[1] We note that the blood test results were not included in the lower court record. The actual results are not necessary for reaching a decision in this case because the issue here is whether the delay was reasonable. However, because there does not appear to be any dispute regarding the results, we note as background information that the test results indicated that defendant's blood alcohol level was 0.27.

whether the delay was reasonable is a determination left to the court. *People v Jacobsen*, 205 Mich App 302, 306-307; 517 NW2d 323 (1994), rev'd on other grounds 448 Mich 639; 532 NW2d 838 (1995); MRE 104(a). At the time that the circuit court heard this case, it was generally accepted that in order for the results of chemical tests of blood alcohol to be admitted into evidence, a prosecutor must meet four foundational requirements, as follows:

> (1) the operator administering the test is qualified; (2) the proper method or procedure was followed in administering the test; (3) the test was performed within a reasonable time after the arrest; and (4) the testing device was reliable. [*Jacobsen, supra* at 305, citing *People v Kozar*, 54 Mich App 503, 509, n 2; 221 NW2d 170 (1974).]

The only requirement relevant in this case was whether the test was performed within a reasonable time. The circuit court in this case required that the prosecutor put forth evidence before admission of the test showing that defendant's blood alcohol level at the time of the test was to be considered the equivalent of his blood alcohol level at the time of the accident in order to show that the test was performed within a reasonable time. To determine the proper effect, if any, that a delay in testing a defendant's blood alcohol level should have on a drinking and driving case, we look to the law at issue and the policy surrounding Michigan's drinking and driving laws.

We first address the "implied consent statute," MCL 257.625a; MSA 9.2325(1), which governs the admissibility of chemical tests in drinking and driving cases. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent and purpose of the Legislature. *People v Stanaway*, 446 Mich

643, 658; 521 NW2d 557 (1994); *People v Gilbert*, 414 Mich 191, 200; 324 NW2d 834 (1982). If statutory language is clear, it must be enforced as it is written, but if it is susceptible to more than one interpretation, we must determine what the Legislature meant by the language. *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997). "When the meaning of statutory language is questioned, a reasonable construction must be given by looking to the purpose subserved thereby, and the meaning must be derived from the statutory context within which the language is used." *People v Parsons*, 142 Mich App 751, 756; 371 NW2d 440 (1985) (citations omitted). "Indeed, 'provisions of a statute must be construed in light of the other provisions of the statute, in such a manner as to carry out the apparent purpose of the Legislature.' *Workman v DAIIE*, 404 Mich 477, 507; 274 NW2d 373 (1979)." *Dagenhardt v Special Machine & Engineering, Inc*, 418 Mich 520, 529; 345 NW2d 164 (1984).

The implied consent statute in effect at the time of defendant's accident provides, in pertinent part:

> The amount of alcohol . . . in a driver's blood or urine or the amount of alcohol in a person's breath at the time alleged as shown by chemical analysis of the person's blood, urine, or breath is admissible into evidence in any civil or criminal proceeding. [MCL 257.625a(6)(a); MSA 9.2325(1)(6)(a).]
>
> The results of the test are admissible in a judicial proceeding as provided under this act and will be considered with other competent evidence in determining the defendant's innocence or guilt. [MCL 257.625a(6)(b)(ii); MSA 9.2325(1)(6)(b)(ii).]
>
> Except in a prosecution relating solely to a violation of section 625(1)(b) or (6), the amount of alcohol in the driver's blood, breath, or urine at the time alleged as shown

by chemical analysis of the person's blood, breath, or urine gives rise to the following presumptions:

*    *    *

If there were at the time 0.10 grams or more of alcohol per 100 milliliters of the defendant's blood, . . . it is presumed that the defendant was under the influence of intoxicating liquor. [MCL 257.625a(9)(c); MSA 9.2325(1)(9)(c).]

The statute does not expressly state what type of test is required as a prerequisite to the admission of chemical tests. Indeed, the statute itself does not require any prerequisite to admission. Instead, the Legislature simply states that the amount of alcohol in a driver's body *at the time alleged* as shown by chemical analysis of the person's blood, urine, or breath *is admissible* into evidence." MCL 257.625a(6)(a); MSA 9.2325(1)(6)(a) (emphasis added). The Legislature did not include a limit on the amount of time that the chemical analysis would continue to show the amount of alcohol "at the time alleged." *Id.* Clearly, "at the time alleged" refers to the time of the offense. See *State v Taylor*, 132 NH 314, 318; 566 A2d 172 (1989). Pursuant to the plain language of the statute, a chemical test, regardless of the amount of time before the test is actually performed, is assumed to be a reasonable approximation of a person's blood alcohol level at the time of the offense. The Legislature has determined that a chemical test is generally a sufficiently close indicator of a person's blood alcohol content at the time of the offense that it must be allowed into evidence.

The statute also states that "[i]f there were *at the time* 0.10 grams or more of alcohol per 100 milliliters of the defendant's blood, . . . it is *presumed* that the

defendant was under the influence of intoxicating liquor." MCL 257.625a(9)(c);  MSA 9.2325(1)(9)(c) (emphasis added). Notably, the Legislature stated in this subsection that the presumption existed if there were 0.10 grams or more "at the time," and not "at the time alleged." The Legislature could have used such "alleged" language had it intended to require a prosecutor to extrapolate the blood alcohol content back to the time of the offense, and indeed the Legislature proved itself capable of using this language in other sections of the statute. Since the plain language evidences such a distinction between the words used in these sections, we are not prepared to undermine such distinction by reading the same meaning into each phrase.[2] Instead, the phrase, "at the time" must be read not as requiring proof of a certain blood alcohol level at the time of the offense, but at the time of the test itself. Thus, the blood alcohol test results are statutorily deemed to relate back to the time of the alleged offense. In addition, the plain language of subsection 625a(9), stating that certain blood alcohol levels will result in "presumptions" that a "defendant's ability to operate a vehicle was impaired," MCL 257.625a(9)(b);  MSA 9.2325(1)(9)(b), or that a "defendant was under the influence of intoxicating liquor," MCL 257.625a(9)(c); MSA 9.2325(1)(9)(c), is

---

[2] We note that even where a New Hampshire statute stated that "a court may admit evidence of the amount of alcohol in the defendant's blood *at the time alleged*, as shown by a test. . . . Evidence that there was, *at the time alleged*, 10/100 percent or more by weight of alcohol in his blood is prima facie evidence . . . ." NH Rev Stat Ann § 265:89 (Cum Supp 1988) (emphasis added), the New Hampshire Supreme Court held that the language did not require the prosecutor to prove that the defendant had a 0.10 or greater blood alcohol content at the precise time he was driving because this result would be "illogical." *State v Taylor*, 132 NH 314, 318; 566 A2d 172 (1989).

contrary to the circuit court's foundational require-
ment that additional evidence must be put forth
showing the reliability of delayed tests. While the stat-
utory language would allow the blood alcohol test
results, standing alone, to provide the evidence of
impairment or intoxication, the circuit court holding
requires additional evidence linking the test and the
offense. See *Taylor, supra* at 319. This holding, in our
judgment, undermines the clear statutory
presumption.

Further, we recognize that the intent of the implied
consent statute is " 'to obtain the best evidence of
blood alcohol content at the time of the arrest of a
person reasonably believed to be driving while intoxi-
cated' and ultimately 'to prevent intoxicated persons
from driving on the highways.'" *Kozar, supra* at 507,
quoting *Collins v Secretary of State*, 384 Mich 656,
668; 187 NW2d 423 (1971). In order to prevent drink-
ing and driving, and thus "protect the innocent users
of streets and highways from the hazard of vehicles
under the management of those irresponsible persons
who insist on driving while so influenced," *State v
Ulrich*, 17 Ohio App 3d 182, 185-186; 478 NE2d 812
(1984); see also *People v Perlos*, 436 Mich 305, 327;
462 NW2d 310 (1990), the Legislature enacted the
implied consent statute to enable the state to obtain
convictions without being unduly burdened in the
proof of the crime. For example, persons who oper-
ate vehicles on public highways are "considered to
have given consent to chemical tests of his or her
blood," rather than requiring the state to first obtain
actual consent or a search warrant. MCL 257.625c(1);
MSA 9.2325(3)(1). Also, persons with a certain blood
alcohol level are "presumed" to be in violation of the

law. MCL 257.625a(9); MSA 9.2325(1)(9). Although the Legislature could, of course, explicitly require that chemical tests be administered within a specific amount of time, or that the prosecutor set forth specific evidence as a prerequisite to admission, it did not do so here. Absent clear statutory language requiring a greater prosecutorial burden in admitting chemical tests of blood alcohol, and considering the clear purpose of the statute, we believe that a necessary inference is that the Legislature did not authorize such a burden. A requirement that the prosecution set forth preliminary evidence showing the reliability of the test results where there was any delay in testing would potentially frustrate the statute's purpose by imposing an additional burden on the prosecutor in OUIL cases.

Second, we address the practical policy aspects of the circuit court's holding in this case. In this regard, we agree fully with the trial court's statement quoted in Judge SMOLENSKI's dissenting opinion in *People v Wager*, 233 Mich App 1, 12; 592 NW2d 389 (1998), rev'd 460 Mich 118; 594 NW2d 487 (1999), in which the majority of a panel of this Court held that the prosecution must extrapolate a blood alcohol test back to the time of the offense in order to admit the test results: "To accept the premise being postured here would mean that every time there's a driving incident or an accident there would have to be portable medical teams, portable labs on the site, investigation, and that's just not the statutory scheme." Further, in a situation such as the instant one, even carrying portable labs would not reduce the delay because remote sites, including many in the sparsely populated areas of the Upper Peninsula, may take sig-

nificant time to reach, and even then the defendant may not be present at the site and may have to be found before a chemical test can be performed. The extrapolation requirement is not an insignificant burden. The Supreme Court of New Hampshire insightfully discussed this burden as follows:

> Extrapolation, however, requires evidence that the *State will rarely be able to acquire* because of the defendant's constitutional right to remain silent. Extrapolation requires evidence as to when, and in what amounts, the defendant consumed the alcohol prior to driving. Without this information, which is *wholly within the defendant's knowledge* in the vast majority of cases, extrapolation of blood alcohol content back to the time of driving becomes an impossible task. The legislature could not have intended to place such an *impossible burden* on the State.
>
> Second, even if the State were able to obtain evidence as to the exact time and the precise amount of alcohol consumed by the defendant prior to his driving, conclusive evidence of the blood alcohol content at the time of driving could still not be offered to the jury in the guise of a general rule because the rate of absorption of alcohol varies considerably between individuals. . . . The extrapolation evidence is further complicated by the amount of food consumed by the defendant at the time he consumes alcohol, which affects the rate of absorption. [2 D. Nichols, Drinking/Driving Litigation § 23:01 (1985).] This evidence is, again, wholly within the knowledge of the defendant. The legislature could not have intended to place such impossible roadblocks in the way of the State in prosecuting DWI cases. [*Taylor, supra* at 320 (emphasis added).]

We agree fully with the New Hampshire Supreme Court. While we can imagine a more reliable method of testing impaired or intoxicated driving, such as a motor vehicle that itself takes continuous readings of blood alcohol levels of its driver, this method is not

yet, to say the least, required by the Legislature. Until such time as we are able to rely on such technology, the state must prosecute drinking and driving offenses with the best evidence that it can reasonably obtain. The tests currently available cannot reflect a defendant's blood alcohol content at precisely the moment he was driving. Given this fact, most, if not all, cases, would require some additional evidence attempting to extrapolate the results to the time of the offense if extrapolation were required as a condition of admissibility. See *Taylor, supra* at 319. Thus, it would be increasingly difficult for the state to convict defendants of impaired or intoxicated driving where the evidence of the crime is a blood alcohol test. As a result, some unknown number of OUIL cases would be dismissed where they would not have been dismissed otherwise. The difficulty of establishing evidence of a nexus between the offense and the test results would have the effect of encouraging defendants to delay taking a blood alcohol test for as long as possible while providing no information regarding their actions near the time of the offense. A defendant's own actions should not be allowed to effect the suppression of evidence against him.

In addition, we agree with the Supreme Court's statement in *People v Sloan*, 450 Mich 160, 197, n 11; 538 NW2d 380 (1995): "Because a person's blood-alcohol level dissipates over time, the danger to the rights of the defendant that are being protected by such a rule is not readily apparent." In the overwhelming majority of cases, delay on the part of the police will only inure to the defendant's benefit.

Although there are exceptions to this,[3] we believe that it would be more sensible to allow defendants to set forth evidence at trial showing the unreliability of the blood alcohol test taken in their particular cases rather than to burden the system generally by assuming that a delay is harmful to defendants in the absence of contrary evidence from the prosecutor and thereafter suppressing the results, as required by a foundational extrapolation standard. Certainly a defendant is always free to argue that a delay undermined the test results at trial, but placing an affirmative burden on the state to establish a nexus between the test results and the blood alcohol level at the time of the offense in order to even admit the test results is too onerous a procedure, in our judgment. We conclude that the statute at issue, as well as practical state policy surrounding the rule against drinking and driving, does not support a foundational extrapolation standard, which requires the prosecutor to offer evidence that the test results accurately reflected a defendant's blood alcohol level at the time of the offense.

Third, we address the correct standard to be applied as a prerequisite to the admission of blood alcohol tests. Although the statute itself does not contain any foundational requirement, all evidence continues to be subject to all other applicable precedents and rules regarding the admissibility of evidence. The prerequisite standard for admissibility of blood alcohol tests applied by the circuit court is more than a preliminary question regarding mere admissibility;

---

[3] See, e.g., LaRocca, *Admissibility of delayed blood test results—Commonwealth v Gonzalez, 519 Pa 116; 546 A2d 26 (1988)*, 62 Temple L R 757, 766, n 57 (1989).

rather, it is a question regarding the effect of the evidence on the ultimate question of guilt or innocence that should properly be determined by the trier of fact. In our judgment, this is inconsistent with the statute, as well as the policy against drinking and driving.

The fact that there is a delay between the time of the offense and the time of the testing does not affect the reliability of the test results, which is shown by the proper administration of properly working equipment by a qualified operator. A delay *does* affect both the relevancy of the test results and, if relevant, the weight that the results may be accorded by the trier of fact in the ultimate determination of guilt or innocence. It appears that the circuit court would require a prosecutor to put forth evidence regarding the weight of the test results as a test of admissibility, when the standard for admissibility of blood alcohol tests should be limited to their relevance to a case. Pursuant to MRE 402, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Therefore, we conclude that if the test result has any tendency to show that a defendant was more probably or less probably impaired or intoxicated when driving, and this probative value is not substantially outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of

undue delay, waste of time, or needless presentation of cumulative evidence," MRE 403, the result must be admitted into evidence. Certainly there will be extensive time delays that may make a test irrelevant, although the exact length of time will depend on the circumstances of the particular case and must be left to the discretion of the trial court. Where there is "any tendency" that the test results make the existence of a defendant's state of intoxication at the time of the offense more or less probable than without the evidence, the test result must be admitted unless it is properly excluded under MRE 403. At that point, a defendant would then be free to argue the relative merit of the evidence to the trier of fact. "Admissibility, in other words, is a question entirely distinct from the due process requirement of proof beyond a reasonable doubt." *Miller v State*, 597 So 2d 767, 770 (Fla, 1991) (Kogan, J., specially concurring).

Our analysis in this case is supported by the Supreme Court of Florida, which held:

[T]he inability of the State to "relate back" blood-alcohol evidence to the time the defendant was driving a vehicle is a question of credibility and weight-of-the-evidence, not of admissibility, provided the test is conducted within a reasonable time after the defendant is stopped.

What is "reasonable" in this context will depend upon the facts of each case. As a general rule, we believe a test is conducted at an unreasonable time if the results of that test do not tend to prove or disprove a material fact, or if the probative value of the evidence is outweighed by its potential to cause prejudice or confusion. [*Id.*]

Similarly, where a Colorado statute permitted a jury to infer that a defendant was under the influence of alcohol if it found a certain amount of alcohol in his

blood at the time of the offense "or within a reasonable time thereafter," the "reasonable time" limitation was equated with a relevancy standard. *People v Emery*, 812 P2d 665, 667 (Colo App, 1990). The Colorado Court of Appeals stated:

> [T]he delay in obtaining samples did not affect the validity or reliability of the test, nor did it affect the admissibility of the test results. The "reasonable time" limitation is to ensure that the request for the test is made close enough in time to the alleged offense that the results will be relevant in the determination of a defendant's sobriety at the time of the incident. And, while the timeliness of the blood test may affect its accuracy, evidence which relates to the accuracy of a chemical test affects the weight to be accorded the evidence, rather than its admissibility. [*Id.* (citations omitted).]

Even more importantly, our analysis on this issue also comports with that of the Michigan Supreme Court in *People v Wager*, 460 Mich 118; 594 NW2d 487 (1999), in which the Court reversed the Court of Appeals decision, which had held that in order to fulfill the foundational admissibility requirement that a blood alcohol test was administered within a reasonable time, a prosecutor was required to offer evidence that the blood test results accurately reflected a defendant's blood alcohol level at the time of the offense. The Supreme Court stated:

> Looking at the origin of the rule as set forth in *Kozar* and the absence of a dispositive ruling on point from this Court, we are satisfied that no sound reason exists to engraft the "reasonable time" element onto the clear language of the statute. Thus, to the extent that *Kozar* and its progeny adopt a "reasonable time" element, they are expressly overruled. [*Id.* at 123-124.]

Thus, the Supreme Court held that, "[p]ursuant to the clear statutory language, test results 'are admissible . . . and will be considered,' MCL 257.625a(6)(b)(ii); MSA 9.2325(1)(6)(b)(ii), and the prosecutor is not required to introduce expert testimony on this issue." *Wager*, 460 Mich 125-126. "To the extent that the passage of time reduces the probative value of the test, the diminution goes to weight, not admissibility, and is for the parties to argue before the finder of fact." *Id.* at 126.

For the reasons stated above, we conclude that the implied consent statute and the policy regarding drinking and driving support the conclusion that the only prerequisite to admission of blood alcohol test results is a threshold relevancy requirement, as codified in MRE 401, 402, and 403. Under this standard for admissibility, we agree with the reasoning of Judge SMOLENSKI in his dissenting opinion in *People v Wager*, 233 Mich App 1, 13, that "[f]inding nothing inherently unreasonable" solely in the delay between the time of the offense and the time of the blood test, we are "unwilling to second-guess the trial court's considerable discretion." In the case before us, the district court was aware that there was a delay between the accident and the blood test of about two hours and twenty-four minutes, and that defendant denied having ingested any alcohol after the accident. This delay was not so long that we can say that the test result did not have some tendency to make the fact of defendant's intoxication at the time of the accident more or less probable. Therefore, the test result was relevant to the case, and the district court properly denied defendant's motion to suppress the

test result.[4] Any further discussion regarding the effect of the delay should take place at trial, where it will properly influence the weight given to the result by the trier of fact.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[4] The circuit court in this case applied a two-part test that included the reasonableness of the delay from the standpoint of the police officers' actions, and the reasonableness of the delay with regard to the "probity of the test as to the condition of the driver at the time of the offense." We conclude that the good or bad faith of the police officers conducting a blood alcohol test has no obvious part in determining the relevance of such a test to a drinking and driving case. While the good or bad faith of the police officers with regard to a delay may conceivably be relevant to some other inquiry, there is no allegation of bad faith on the part of the police officers in this case. Thus, we decline to speculate about the possible consequences if such an allegation were, in fact, demonstrated.