IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0075-04






THE STATE OF TEXAS



v.



 MATTHEW REID MECHLER, Appellee




ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


FORT BEND COUNTY






 Cochran, J., filed a concurring opinion, in which Meyers, Price and
Johnson, JJ., joined.



OPINION 


 

 I concur in the majority's resolution and agree with much of its reasoning concerning
the admissibility of intoxilyzer results in the absence of retrograde extrapolation testimony. 
I write separately to emphasize two points: 1) the difficulty of making individualized Rule
403 rulings in a pretrial setting; and 2) the need to make individualized Rule 403 rulings on
proffered intoxilyzer test results that account for the degree to which the result exceeds the
legal limit of 0.08% as well as the time elapsed from driving until the test is taken. I do not
understand the majority opinion to imply that intoxilyzer test results are always admissible
in a DWI trial under Rule 403, only that, given the specific evidence in this case, the trial
court abused its discretion in excluding this particular test result under Rule 403 at the
pretrial stage. 

A. Rule 403 rulings are context-driven and depend upon the specific evidence
before the trial court at the time of the ruling.


 First, as a general rule, most of Rule 403's work of balancing probative value against
the risk of unfair prejudice or confusion of issues is done during trial, not pretrial. (1) As the
Third Circuit has stated in discussing pretrial rulings concerning scientific evidence, it is rare
that Rule 403 is an appropriate basis for the pretrial exclusion of evidence because the trial
judge cannot ascertain potential relevance or the impact of countervailing factors without "'a
virtual surrogate for a trial record.'" (2) 

 Second, Rule 403 rulings are largely idiosyncratic. Such rulings usually depend upon
the precise evidentiary context of a particularized trial setting, taking into consideration the
ebb and flow of trial testimony, the unique circumstances and facts, and the specific
contested issues. (3) Rule 403 rulings, because of their finely tuned balance of probative value
versus unfair prejudicial effect, do not travel well from case to case. Indeed, legal precedents
are of so little value in dictating the proper weight of the balancing process that the American
Law Institute specifically forbade the use of Rule 403 rulings as legal precedent when it
drafted the Model Code of Evidence. (4) As aptly put by the Fifth Circuit, the specific result
of the trial court's conscientious balance of unique facts and circumstances under Rule 403
"is not subject to scrutiny by an appellate Bureau of Weights and Standards that balances the
factors gram for gram." (5)

 Thus, the authority of the trial judge to make individualized, discretionary rulings
under Rule 403 during trial is extensive, but it is not boundless. All Rule 403 rulings are
subject to three general considerations: (6) 

 1) the trial judge should exercise his power to exclude evidence under Rule 403
sparingly; (7)


 2) the trial judge's discretion under Rule 403 is not an invitation to rule
reflexively or without careful reasoning; (8)


 3) the trial judge may not exclude evidence merely because he disbelieves the
testimony. (9) 


As long as the trial court's individualized, context-driven Rule 403 ruling is "within the zone
of reasonable disagreement, the appellate court will not intercede." (10) 

 The problem in this case is that the trial court's pretrial Rule 403 determination does
not appear to be individualized or based upon the specific evidence and context that the trial
court had before it. In balancing the probative value of an intoxilyzer test result against its
potential for creating unfair prejudice or confusion of the issues, the two most significant
items in that balance are: 1) the actual test result itself and how much it exceeded the legal
limit of 0.08% BAC; and 2) the time interval between the defendant's driving and the taking
of the test. Yet there is nothing in the trial court's ruling, reflection, or analysis in this case
that accounts for these two crucial considerations. The trial judge explicitly stated that his
ruling was not based upon the credibility of any witness, and he did not point to the time
lapse between Mr. Mechler's driving and the intoxilyzer test or the extent to which this BAC
test result of 0.165% was in excess of the legal limit as significant factors in his analysis.

 From all appearances, the trial court seems to have created an implicit blanket
prohibition: Under Rule 403 no intoxilyzer test results shall be admissible without
scientifically reliable retrograde extrapolation testimony. That Rule 403 ruling is too
sweeping in scope to be decided in a pretrial motion. (11) That ruling is not a discretionary,
individualized, context-driven ruling under Rule 403. That ruling is instead the enactment
of a newly minted rule of evidence, one that is not contained within the Texas Rules of
Evidence. A trial court abuses its discretion and acts arbitrarily and without reference to the
guiding principles of law if it creates a universal rule of exclusion under Rule 403 applicable
to all cases without regard to the specific facts or context. For this reason alone I would
conclude that, based upon the present record, the trial court abused its discretion in excluding
the intoxilyzer test result evidence.

B. Balancing the probative value of intoxilyzer test results against the danger of
unfair prejudice or confusion of issues under Rule 403 in the absence of
retrograde extrapolation testimony.


 Because the issue of admitting or excluding intoxilyzer test results under Rule 403 is
one that arises in Texas trial courts on a daily basis, we should provide guidance to trial
courts concerning the process of balancing probative value against unfair prejudicial effect
when retrograde extrapolation testimony is not available.

 The primary indicator of whether a person is intoxicated is his blood alcohol
concentration (BAC) level. The BAC describes the concentration of alcohol in a person's
blood expressed as weight per unit of volume. At 0.10 % BAC, a person has a concentration
of 100 mg of alcohol per 100 ml of blood. The BAC may be determined by a blood test,
urine test, or, most frequently in DWI prosecutions, by an intoxilyzer test which analyzes a
driver's exhaled breath.

 Scientific studies have shown that alcohol may affect one's driving ability at BAC
levels as low as 0.02%. (12) The probability of causing an automobile accident begin to
increase significantly at a BAC level of 0.05% and climbs rapidly after about 0.08%. (13) As
of 2004, every state in the nation except Minnesota had adopted a per se DWI or DUI statute
specifying that a BAC of 0.08% or greater is sufficient proof, by itself, of legal intoxication. (14) 
The push for a national standard of 0.08% was "based on laboratory and on-road research
which demonstrated that the majority of drivers, regardless of experience, are significantly
impaired at 0.08 percent BAC[.]" (15) This national standard was based upon the recognition
that the "average" driver has lost the normal use of his mental or physical faculties at this
level. Laws and statutory presumptions are written for the "average" case although a specific
driver, because of individual variables such as weight, gender, physical condition, metabolic
rate, time of day, mental state, presence or absence of food in the digestive system,
medications, and tolerance for alcohol, might not be impaired at this precise level. But the
Texas per se intoxication law, like that in the other 49 states, was written with the
hypothetical "average" driver in mind, regardless of individual variables.

 Of course, a BAC result of 0.08% on a breath test taken some time after a person has
stopped driving does not necessarily correspond to the BAC result that person would have
tested at had he been tested at the time he was driving. (16) A number of state legislatures,
recognizing that it is not possible for law enforcement officers to test a driver's BAC while
he is driving, (17) have drafted their per se DWI laws such that the law expressly relates the
BAC test back to the time of driving, either by a rebuttable presumption or by the definition
of the offense. (18) For example, the Alaska DWI statute makes it a crime to operate a motor
vehicle when, "as determined by a chemical test taken within four hours after the alleged
operation or driving," a person's blood contains 0.08% or more alcohol. (19) Similarly, Arizona
law provides that it is illegal to have a BAC of 0.08% or more within two hours of driving. (20)

 Regardless of their use of statutory presumptions or definitions of DWI incorporating
a time lapse between driving and the taking of a breath test, the vast majority of states do not
require the prosecution to relate breath test BAC levels back to the time of driving as a
predicate to their admission. (21) Courts have rejected the necessity for such "relation-back"
or "retrograde extrapolation" (22) evidence for a variety of reasons:

 * To create such a requirement would place an impossible burden on the
prosecution because only the defendant knows the pertinent variables; (23)


 * The DWI statute does not require such relation-back evidence; (24)


 * The test result, standing alone, creates a prima facie showing of intoxication
at the time of driving which the defendant may rebut; (25)


 * The test results alone constitute sufficient evidence of intoxication to obtain
a DWI conviction; (26) and


 * Other evidence of intoxication corroborates the test results. (27)


Of course, these statutes allow, and courts permit, the defendant to offer expert retrograde
extrapolation testimony to show that his individual BAC was, in fact, below the legal limit
at the time he was driving. (28) 

 The "average" alcohol absorption and elimination rate is 0.15% per hour, thus the
higher the intoxilyzer test result, the more likely that the driver was intoxicated not only at
the time of the test, but also at the time of driving. Expert retrograde extrapolation testimony
can exclude the possibility that a driver's BAC level was still rising in the absorption stage
and had not yet reached the legal limit at the moment he stopped driving. But as one court
has stated in rejecting an argument that the State must offer extrapolation evidence, "the law
was not intended to encourage a perilous race to reach one's destination, whether it be home
or the next bar, before the blood alcohol concentration reaches the prohibited level." (29) While
it may be within the realm of possibility that a specific driver "chug-a-lugged" enough
alcohol immediately before or after getting behind the wheel of a car to race to his next
destination before his BAC level reached the legal limit of 0.08%, this is a sufficiently
remote scenario for state legislatures to have discounted it in drafting their DWI laws which
do not require extrapolation testimony.

 As this Court aptly noted in Mata v. State, (30) retrograde extrapolation testimony is
scientifically unreliable unless the expert witness knows a vast amount of personal
information about the driver including: 

 the presence and type of food in the stomach, the person's gender, the person's
weight, the person's age, the person's mental state, the drinking pattern, the
type of beverage consumed, the amount consumed, and the time period of
alcohol consumption. (31)


This is all information that is within the defendant's personal knowledge, but, under the Fifth
Amendment, it is not within the State's power to compel the defendant to disclose this
information. (32) Although Mata held that retrograde extrapolation evidence that fails to
account for individual variables is inadmissible, in Stewart v. State, (33) we held that a BAC test
result, taken eighty minutes after the defendant was arrested, still had some probative value 
without retrograde extrapolation evidence, and thus was relevant under Rule 401. (34) All
relevant evidence, even evidence with a low probative value, is admissible under Rule 402
unless excluded under some other statute or rule, such as Rule 403. 

 In discussing Rule 403, the majority sets out the four major, but non-exclusive, factors
that Texas courts use for balancing probative value and prejudicial effect. The single most
important factor in the context of admitting breath test results in the absence of extrapolation
testimony is the inherent probative value of the test result. In turn, the relative probative
value of the test depends primarily upon two variables: 1) the degree to which the test result
exceeds the legal limit of 0.08%; and 2) the amount of time elapsed between driving and the
taking of the test. The higher the test result and the shorter the time between driving and
testing, the more likely the logical inference is that the defendant had a BAC level at or
above 0.08% at the time of driving. The stronger the inference of a BAC of 0.08% or greater
at the time of driving, the less significant is the necessity for expert retrograde extrapolation
testimony. Conversely, the weaker the inference of guilt, the more vital is the necessity for
evidence that relates an accused's BAC test result back to the time of driving. When a test
is obtained long after the arrest and the result is at or below the legal limit, the logical
inference that the person had a 0.08% BAC at the time of driving may be so tenuous that a
trial judge appropriately exercises his discretion by excluding that specific test result under
Rule 403 absent expert testimony that extrapolates the test result back to the time of driving.

 In this case, however, the trial judge did not conduct such an individualized
assessment, and he failed to offer any rationale as to why the danger of unfair prejudice of
evidence of an intoxilyzer test result of 0.165%- twice the legal limit- taken a mere hour and
a half after Mr. Mechler stopped driving "substantially" outweighed its probative value. 
There might be something truly extraordinary about the specific circumstances in this case
that would support such a discretionary ruling, but if so, the pretrial record does not reflect
those specific facts.

 Under these circumstances, therefore, I agree with the majority's conclusion that the
trial judge abused his discretion in excluding the evidence of Mr. Mechler's intoxilyzer test
results.


Cochran, J. 

Filed: January 12, 2005

Publish






 
1. See Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir.1994) (noting "cautious approach to
Rule 403 exclusions at the pretrial stage"); Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1240 (3d Cir. 1993) (same).
2. In re Paoli RR Yard PCB Litig., 35 F.3d 717, 747 (3d Cir. 1994) (quoting In re Paoli
R.R. Yard PCB Litig., 916 F.2d 829, 855 (3d Cir. 1990)).
3. 1 Christopher B. Mueller and Laird C. Kirkpatrick, Federal Evidence § 93 at
477 (2d ed. 1994); see Li v. Canarozzi, 142 F.3d 83, 88 (2d Cir. 1998) (trial judge has broad
discretion in performing balancing analysis under Rule 403 because he "sees the witnesses, the
parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely
impact of the evidence"); United States v. Esdaille, 769 F.2d 104, 108 (2d Cir. 1985) (trial judge
is "in a superior position to evaluate the likely impact of the evidence, since he sees the
witnesses, the parties, the jurors, and the attorneys, and their mannerisms and reactions").
4. See A.L.I. Model Code of Evidence Rule 303 (Discretion of Judge to Exclude
Admissible Evidence), Comment (1942):

 The application of this rule should depend so completely upon the
circumstances of the particular case and be so entirely in the discretion of the trial
judge that a decision in one case should not be used as precedent in another.

See also 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and
Procedure § 5214, at 265 (1977) (past decisions useless in weighing process under Rule 403).
5. Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 782 (5th Cir. 1983).
6. See generally, 1 Mueller & Kirkpatrick, § 93, at 479.
7. Montgomery v. State, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990) (op. on reh'g)
(presumption under Rule 403 is that probative value outweighs prejudicial effect "unless in the
posture of the particular case the trial court determines otherwise"); see Connor v. State, 67
S.W.3d 192, 202 (Tex. Crim. App. 2001)("Rule 403 requires exclusion of evidence only when
there exists a clear disparity between the degree of prejudice of the offered evidence and its
probative value"); Joinder v. State, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992) (Rule 403
envisions exclusion of evidence only when there is a "clear disparity between the degree of
prejudice of the offered evidence and its probative value"); McFarland v. State, 845 S.W.2d 824,
837 (Tex. Crim. App. 1992); see generally 1 Jack Weinstein & Margaret Berger,
Weinstein's Evidence ¶ 403[01], at 403-10 (1998) ("If there is any doubt about the existence of
unfair prejudice, confusion of the issues, misleading, undue delay or waste of time, it is generally
better practice to admit the evidence taking necessary precautions by way of contemporaneous
instructions to the jury followed by additional admonitions in the charge").
8. Montgomery, 810 S.W.2d at 389 (stating that Rule 403 imposes a duty on trial judge to
engage in a balancing process and noting that he "would do well" to inquire of the opponent what
his view of the prejudice is and ask the proponent to articulate his need for the evidence). 
Although a trial judge is not required to articulate his Rule 403 analysis on the record, it is most
helpful to reviewing courts. "Rulings that provide more than bare conclusions and indicate the
nature of the danger or the underlying considerations are more satisfying and more likely to
survive review." 1 Mueller and Kirkpatrick, § 93, at 481; see, e.g., United States v.
Himelwright, 42 F.3d 777, 781 (3d Cir. 1994) (when trial court "fails to explain" its grounds for
403 ruling and the reasons for doing so "are not otherwise apparent from the record," reviewing
court "need not defer" to trial court's ruling and may "examine the record and perform the
required balancing" itself); United State v. Dwyer, 539 F.2d 924, 928 (2d Cir. 1976) (noting that
"where the reasons for a discretionary ruling are not apparent to counsel, they will probably not
be apparent to an appellate court").
9. Montgomery, 810 S.W.2d at 390 n.3 (re-emphasizing that credibility of the evidence is
not a proper inquiry for the trial judge under Rule 403).
10. Id. at 391.
11. See National Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group, 937 F.
Supp. 276, 287 (S.D.N.Y. 1996) (reserving a ruling on pretrial motion in limine until trial when
admission of particular evidence is in an appropriate factual context).
12. Margaret C. Jasper, DWI, DUI and the Law 13 (Oceana 2004).
13. Id.
14. Id. at 115-16, Appendix 18 (noting that all 50 states have enacted a BAC level of
0.08% per se intoxicated DWI statute, but that Minnesota's statute would not become effective
until August 1, 2005); see also Kimberly S. Keller, Sobering Up Daubert: Recent Issues Arising
in Alcohol-Related Expert Testimony, 46 S.Tex.L.Rev. 111, 111-12 & n.2 (Fall 2004) (noting
that President Clinton, in 1998, called for a national 0.08 BAC per se intoxication limit to reduce
the number of alcohol-related deaths on the nation's highways); see generally Alcohol Policy
Information System, A Project of the National Institute on Alcohol Abuse and Alcoholism,
accessible at http://alcoholpolicy.niaaa.nih.gov. (The statutory DWI provisions of all 50 states
are listed and linked at this site).
15. Jasper at 13.
16. See Mata v. State, 46 S.W.3d 902, 909-10 (Tex. Crim. App. 2001) (noting that "if a
driver is tested while in the absorption phase, his BAC at the time of the test will be higher than
his BAC while driving. If tested while in the elimination phase, his BAC at the time of the test
could be lower than while driving, depending on whether he had reached his peak before or after
he was stopped. Obviously, the greater the length of time between the driving and the test, the
greater the potential variation between the two BACs").
17. Indeed, Texas regulations, like those in virtually all states, prohibit law enforcement
officers from conducting a DWI breath test until after the completion of a fifteen-minute
observation period. 37 T.A.C. § 19.3(c)(1).
18. See generally, D.E. Evins, Construction and Application of Statutes Creating
Presumption or Other Inference of Intoxication from Specified Percentages of Alcohol in System,
16 A.L.R.3d 748 (1967 & 2004 updates); V. Woerner, Validity of Legislation Creating
Presumption of Intoxication or the Like from Presence of Specified Percentage of Alcohol in
Blood, 46 A.L.R.2d 1176 (1956 & 2000 updates).
19. Alaska Stat. § 28.35.030(a)(2); see Conrad v. State, 54 P.3d 313, 313-15 (Alaska Ct.
App. 2002) (holding that DWI statute defines offense in terms of BAC at time of driving, not on
test result itself, but concluding that "[i]f a chemical test is administered to the defendant within
the statutorily prescribed four hours, the test result will create a presumption that the defendant's
blood alcohol level was at least as high at the time the defendant operated or controlled the
vehicle"; defendant may offer evidence to rebut that presumption); see also Fla. Stat. §
316.1934(c) (statutory presumption that one whose breath test BAC registers at 0.08% or higher
was impaired at the time of driving); Disbro v. State, 791 N.E.2d 774, 778 (Ind. App. 2003)
(upholding use of statutory presumption that driver whose BAC tested 0.08% or more within
three hours of driving was intoxicated at time of driving despite defendant's rebuttal evidence);
Commmonwealth v. Murray, 2000 Pa. Super. 84, 749 A.2d 513, 520-21 (2000) (upholding
statutory "common sense permissive evidentiary inference [that a driver was at or above 0.08%
BAC] based upon the BAC, if the testing occurred within three hours of driving"); Welch v. City
of Pratt, Kan., 214 F.3d 1219, 1223-25 (10th Cir. 2000) (upholding Kansas statutory permissive
presumption of driver's intoxication if "while driving, [he] had an alcohol concentration in his
breath of .08 or more as measured within two hours of the time of operating the vehicle").
20. Ariz. Rev. Stat. 28-692(A)(2); See State v. Martin, 174 Ariz. 118, 847 P.2d 619, 623
(App. 1992); see also Ga. Code Ann § 40-6-391(a)(5) ("[a] person shall not drive or be in actual
physical control of any moving vehicle while ...[t]he person's alcohol concentration is 0.08 grams
or more at any time within three hours after such driving or being in actual physical control from
alcohol consumed before such driving or being in actual physical control ended"); N.C. Gen.
Stat. § 20-138.1(a)(2) ("[a] person commits the offense of impaired driving if he drives any
vehicle upon any highway, any street, or any public vehicular area within this State ... [a]fter
having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol
concentration of 0.08 or more"); State v. Tischio, 107 N.J. 504, 506, 527 A.2d 388, 389 (1987) 
(holding "that a defendant may be convicted under N.J.S.A. 39:4-50(a) when a breathalyzer test
that is administered within a reasonable time after the defendant was actually driving his vehicle
reveals a blood-alcohol level of at least 0.10%. We rule that it is the blood-alcohol level at the
time of the breathalyzer test that constitutes the essential evidence of the offense" ).
21. See generally, Jim Frasier, Admissibility and Sufficiency of Extrapolation Evidence in
DUI Prosecutions, 119 A.L.R.5th 379 (2004).
22. Retrograde extrapolation is the scientific process of "working backward" from the BAC
test to an estimate of the person's actual BAC at the time of driving. See Lawrence Taylor,
Drunk Driving Defense § 5.2.1 (5th ed. 2000).
23. See, e.g., State v. Taylor, 132 N.H. 314, 319-20, 566 A.2d 172, 175-76 (1989)
(rejecting defendant's claim that prosecution was required to provided retrograde extrapolation
when breath test was given over an hour after he stopped driving; noting that extrapolation
testimony "requires evidence that the State will rarely be able to acquire because of the
defendant's constitutional right to remain silent. Extrapolation requires evidence as to when, and
in what amounts, the defendant consumed the alcohol prior to driving. Without this information,
which is wholly within the defendant's knowledge in the vast majority of cases, extrapolation of 
blood alcohol content back to the time of driving becomes an impossible task. The legislature
could not have intended to place such an impossible burden on the State"); State v. Kubik, 235
Neb. 612, 619-24, 456 N.W.2d 487, 493-96 (1990) (quoting and following Taylor); People v.
Campbell, 236 Mich. App. 490, 501, 601 N.W.2d 114, 119 (1999) (quoting and relying upon
Taylor, also rejecting need for extrapolation testimony because "[t]he difficulty of establishing
evidence of a nexus between the offense and the test results would have the effect of encouraging
defendants to delay taking a blood alcohol test for as long as possible while providing no
information regarding their actions near the time of the offense. A defendant's own actions
should not be allowed to effect the suppression of evidence against him"); State v. Greenwood,
115 S.W.3d 527, 532 (Tenn. Crim. App. 2003) (quoting and following Kubik and stating that
"[t]he legislature obviously knew a blood alcohol test could not be conducted while the
defendant was driving. We do not believe it intended to place upon the state the impossible
burden of extrapolation in order to prove DUI").
24. See, e.g., Kubik, 456 N.W.2d at 493-501 (collecting and discussing cases from
numerous jurisdictions holding that DWI "per se intoxication" statutes did not explicitly require
extrapolation testimony and courts would not engraft such a requirement for admissibility or
sufficiency of evidence purposes); Greenwood, 115 S.W.3d at 532-33 (stating that legislative
statute did not require expert extrapolation testimony in a DUI prosecution, and concluding that
"a proper blood alcohol test administered at a reasonable time after the defendant has been
driving, which reflects a blood alcohol content of .10% or higher, constitutes circumstantial 
evidence upon which the trier of fact may, but is not required to, convict the defendant of DUI").
25. See, e.g., Commonwealth v. Wirth, 936 S.W.2d 78, 83-84 (Ky. 1996) (rejecting
defendant's claim that extrapolation testimony necessary and holding that legislature intended
that prima facie proof of "per se" DWI arose from properly administered BAC test result of
0.10% or more); Commonwealth v. Yarger, 538 Pa. 329, 334-35, 648 A.2d 529, 531 (1994)
(construing DWI statute and concluding that "once the Commonwealth has established that the
driver's blood alcohol content reflects an amount above 0.10%, the Commonwealth has made a
prima facie case.... At this point, the defendant is permitted to introduce expert testimony to rebut
the Commonwealth's prima facie evidence. If the defendant decides to rebut the prima facie
evidence against him with expert testimony, then the Commonwealth may present its own expert
to refute this testimony"). In Haas v. State, 597 So.2d 770 (Fla. 1992), the Florida Supreme
Court surveyed similar DWI statutes in various jurisdictions before concluding that:

 In attempting to combat the scourge of drunk driving, we do not believe the
legislature intended to place upon the State the difficult and often impossible
burden of extrapolation as a condition precedent to conviction under the [per se
DWI] statute. Though our statute is not as specific as that of Minnesota or
California, we interpret Florida's statutory scheme to mean that the test results
shall be prima facie evidence that the accused had the same blood-alcohol level at
the time of his operation of the vehicle. Properly obtained test results which
reflect a blood-alcohol level of 0.10 or more, standing alone, constitute
circumstantial evidence upon which the finder of fact may (but is not required to)
convict the accused driver of DUI either by impairment or [per se DWI].
However, contrary to the New Jersey position, we do not view the test results as
conclusive. The accused is at liberty to seek to demonstrate through cross-examination or the introduction of other evidence that the test results do not
accurately reflect his or her blood-alcohol level at the time the vehicle was being
operated.

Id. at 774-75.
26. Hass, 597 So.2d at 774-75; Wirth, 936 S.W.2d at 83-84; Terry v. City of Montgomery,
549 So.2d 566, 567 (Ala. Crim. App. 1989) (evidence sufficient to support DWI conviction when
driver's BAC was 0.15% fifty minutes after auto accident; no extrapolation testimony necessary
under statute to prove intoxication at time of driving); State v. Wetzel, 7 Haw. App. 532, 538-39,
782 P.2d 891, 895 (1989) (rejecting defendant's claim that intoxilyzer tests results were
inadmissible and insufficient to support conviction without "relation back" testimony; holding
that DWI per se statute showed legislative intent that BAC test results of 0.10% or more taken
within three hours after time of driving created a permissible inference of guilt, so no further
evidence needed for conviction).
27. Commonwealth v. Kasunic, 423 Pa. Super. 112, 118-19, 620 A.2d 525, 528-29 (1993)
(when defendant's BAC level was twice legal limit fifty minutes after he was found lying on the
roadway smelling of alcohol and appearing to officer to be intoxicated, evidence of intoxication
sufficient without any extrapolation testimony; although "evidence does not indicate the exact
time when appellant operated his vehicle[,] .... in light of the frigid temperature of four degrees
below zero Fahrenheit that night, appellant could not have been at the scene laying on the road
for a substantial period of time"); Commonwealth v. Montini, 712 A.2d 761, 766 (Pa. Super.
1998) (state not required to offer extrapolation testimony in per se DWI prosecution when
defendant's BAC was 0.19% fifty-five minutes after driving and there was evidence he drove
erratically and failed to perform field tests adequately).
28. See generally, Frasier, 119 A.L.R. 5th 379, § 10 (collecting cases from various
jurisdictions that hold that defendant may introduce extrapolation testimony to rebut BAC test
results).
29. State v. Tischio, 208 N.J. Super. 343, 348, 506 A.2d 14, 16 (1986).
30. 46 S.W.3d 902 (Tex. Crim. App. 2001).
31. Id. at 909 (footnotes omitted).
32. See State v. Taylor, 132 N.H. at 319-20, 566 A.2d at 175-76.
33. 129 S.W.3d 93 (Tex. Crim. App. 2004).
34. Id. at 96.