No. 03-756

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 255

CITY OF MISSOULA,

        Plaintiff and Respondent,

    v.

JESSICA R. LYONS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DC 2003-255,
                    Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Mark E. Jones, Attorney at Law, Missoula, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Pamela P. Collins,
        Assistant Attorney General, Helena, Montana

        Andrew F. Scott, Deputy City Attorney, Missoula, Montana

                    Submitted on Briefs:  August 4, 2004

                            Decided:   September 14, 2004

Filed:

                              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Jessica R. Lyons appeals from a denial of her appeal to the District Court on her motion to suppress.  We affirm.

¶2     We restate the issues on appeal as:

¶3     May this Court consult the recording of the evidentiary hearing in the Municipal Court regarding Lyons's BAC test results?

¶4     Did the District Court err in upholding the Municipal Court's finding that the Intoxilyzer 5000 was properly administered?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     On August 30, 2002, in the wee hours of the morning, Missoula Police Department Officer Bob Bouchee transported Jessica R. Lyons from the scene of a car accident to a Missoula booking station.  There, after a female detention officer administered a pat down, Bouchee took Lyons into the booking room and turned on a videotape recorder to record her booking.  Bouchee sought to give Lyons a blood alcohol content (BAC) test through the use of an Intoxilyzer 5000 breathalyzer.  Regulations require that the subject of an Intoxilyzer 5000 test not ingest any food or drink for fifteen minutes prior to the test.

¶6     While in the booking room, but before the test was administered, Lyons asked if she could use the restroom.  Thereafter, Bouchee accompanied Lyons to the restroom, which was directly across the hall from the booking room.  Based on Bouchee's later testimony, and the counter on the videotape, the restroom break took less than two minutes.  The restroom only contains a toilet and a drinking fountain.  Lyons closed the restroom door and Bouchee stood

2

directly outside. He testified that the drinking fountain is rather "loud" and that if Lyons used it he would have heard it being turned on. After Lyons exited the restroom she and Bouchee moved back to the booking room where, less than fifteen minutes later, Lyons took a BAC test and registered a 0.121. The legal limit in Montana at the time was 0.10.

¶7 Lyons was subsequently charged and convicted by a jury of driving with an alcohol concentration of 0.10 or more, § 61-8-406, MCA (2002). At an evidentiary hearing before trial, Lyons moved to suppress the introduction of the BAC test results, claiming that Bouchee had not complied with the requisite regulations. Specifically, Lyons claimed that since she was not under the eye of Bouchee throughout the fifteen minutes prior to the test's administration, the Intoxilyzer 5000 was improperly used. Lyons did not, however, claim that she actually ingested anything while out of Bouchee's sight.

¶8 Following her conviction, Lyons appealed the Municipal Court's denial of her motion to suppress to the District Court. The District Court affirmed the denial, and now Lyons appeals the District Court's judgment to us.

**STANDARD OF REVIEW**

¶9 We review evidentiary rulings to determine whether the court abused its discretion. *State v. Teters*, 2004 MT 137, ¶ 17, 321 Mont. 379, ¶ 17, 91 P.3d 559, ¶ 17. The determination of whether evidence is relevant and admissible is left to the trial judge and will not be overturned absent a showing of abuse of discretion. *Teters*, ¶ 17.

3

## DISCUSSION

## ISSUE ONE

¶10 *May this Court consult the recording of the evidentiary hearing in the Municipal Court regarding Lyons's BAC test results?*

¶11 Lyons correctly contends that the District Court did not review the electronic recording of the Municipal Court's evidentiary hearing, nor a transcript of the recording. The District Court stated it did not know of any such recording or transcript and stated that in affirming the Municipal Court's denial of Lyons's motion to suppress it did not rely on the recording but instead on the videotape of Lyons's booking.

¶12 The District Court did discuss Officer Bouchee's testimony, however, and that testimony, of course, is not on the booking videotape. Therefore, instead of directly relying on the evidence presented at the evidentiary hearing, it appears that the District Court must have relied on the Municipal Court's written evidentiary ruling, or the parties' briefs presented to the District Court. Since the District Court did not directly consider the evidence, Lyons argues that this Court is precluded from considering it as well. Lyons is wrong in this contention. Under this state's rules regarding appeals to district court, § 3-6-110(2), MCA, and appeals to this Court, Rule 9(a), M.R.App.P., the electronic recording of a courtroom hearing is properly a part of the record. Furthermore, this Court properly received the electronic recording, along with the rest of the record, from the District Court. Therefore, irrespective of whether the District Court made use of it, the electronic recording

4

of the Municipal Court's evidentiary hearing, including Officer Bouchee's testimony, is properly part of the record available for our review.

## ISSUE TWO

¶13     *Did the District Court err in upholding the Municipal Court's finding that the Intoxilyzer 5000 was properly administered?*

¶14     Rule 23.4.212(7), ARM, states: "Breath samples of deep lung air shall be analyzed using only the breath analysis instrumentation approved under this rule.   Breath analyses will be performed according to an operational checklist for the breath analysis instrument being used."  The Intoxilyzer 5000 has been accordingly approved for administering BAC tests.

¶15     As we have said in the past, every defendant deserves the protection of Montana's administrative rules.  *State v. Fenton*, 1998 MT 99, ¶ 16, 288 Mont. 415, ¶ 16, 958 P.2d 68, ¶ 16.  Contrary to Lyons's assertions, however, the current version of the "operational checklist" does not require that the subject be "observed" for a minimum of fifteen minutes.  Lyons correctly notes that in *Fenton* we did state that the checklist of the Intoxilyzer 5000 requires the subject be "observed" for the fifteen minutes prior to the test.  *Fenton*, ¶ 15.  However, that statement was based on the checklist in use at that time.  Since then the checklist has changed.  At the time of Lyons's offense, the checklist (and therefore Rule 23.4.212(7), ARM) mandated that the test administrator ensure (1) there was "no oral ingestion of any material" in the fifteen minutes prior to testing, (2) the subject was instructed to deliver a proper sample, (3) the subject was "observed during *sample delivery*,"

5

and (4) that nothing occurred that could affect the results. (Emphasis added.) There was no requirement that the administrator keep his eyes on the subject at all times. "Observation" (whether that word requires a line of sight or not) was only required during the actual testing, not during the prior fifteen minutes.

¶16 Lyons places reliance on a Washington State case interpreting an equivalent BAC testing requirement. *Walk v. State, Dept. of Licensing* (Wash. Ct. App. 1999), 976 P.2d 185 (interpreting Wash. Admin. Code § 448-13-040). *Walk* is not helpful to Lyons's case for two reasons. First, unlike Rule 23.4.212(7), ARM, and its referenced operational checklist, Washington Administrative Code § 448-13-040, as interpreted by the court in *Walk*, required the test administrator to "observe" the subject for the full fifteen minutes prior to the test. *Walk*, 976 P.2d at 187-88. Second, the court's interpretation of "observe" did not require the administrator to have his eyes on the subject at all times. *Walk*, 976 P.2d at 186 ("We conclude that WAC 448-13-040 does not require that the officer actually administering the BAC test *personally* observe the suspect during the required 15-minute observation period." (emphasis added)). Even if Montana law required the BAC test administrator to "observe" the subject for fifteen minutes prior to the test's administration, under this interpretation of "observe" the law would not require him to have the subject in his line of sight for the entire period.

¶17 In this case, Officer Bouchee did not have the subject in his line of sight for the entire fifteen minutes. Even so, the officer did follow the Intoxilyzer 5000's operational checklist. Bouchee testified that he was sure Lyons did not ingest any materials during the requisite

fifteen minutes. Lyons was under personal observation for over thirteen of those fifteen minutes, and while she was using the restroom Bouchee stood outside the restroom's door and did not hear use of the restroom's drinking fountain. In addition, Lyons did not have anything on her person that she could have ingested because an officer had patted her down when she arrived at the booking station. Furthermore, Lyons has never contended that she *did* ingest anything in the restroom. The record supports the Municipal Court's finding that there was no oral ingestion of any material and that Officer Bouchee adhered to the operational checklist.

¶18    We conclude that the Municipal Court did not abuse its discretion in its decision to deny Lyons's motion to suppress the results of her BAC test. Therefore, the judgment of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM RICE