No. 04-273

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 122

STATE OF MONTANA,

  Plaintiff and Respondent,

 v.

PATRICK EUGENE FLAHERTY,

  Defendant and Appellant.

APPEAL FROM:  District Court of the First Judicial District,
    In and for the County of Lewis and Clark, Cause No. ADC 2003-129
    The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Wendy Holton, Attorney at Law, Helena, Montana

  For Respondent:

    Honorable Mike McGrath, Montana Attorney General, Mark W. Mattioli,
    Assistant Attorney General, Helena, Montana; Robert J. Wood, Assistant
    City Attorney, Helena, Montana

Submitted on Briefs: February 2, 2005

Decided: May 17, 2005

Filed:

_____
          Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Patrick Eugene Flaherty appeals from a Decision and Order of the Montana First Judicial District Court denying his motion to suppress the results of an Intoxilyzer 5000 breath test.  We affirm.

## ISSUE

¶2     Did the District Court abuse its discretion when it denied Flaherty's motion to suppress the results of the Intoxilyzer 5000 test?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On February 22, 2003, at approximately 2:00 a.m., Helena Police Officer Derek Wakefield observed a vehicle stopped partially in the roadway with its brake lights engaged. Wakefield discovered Flaherty behind the wheel, apparently asleep, with his foot on the brake pedal.  Flaherty awakened and had difficulty putting the vehicle in park.

¶4     Wakefield observed that Flaherty appeared to be confused, had red eyes, and smelled of alcohol.  After conducting field sobriety tests and a preliminary alcohol screening test (PAST), Wakefield arrested Flaherty, and placed him in handcuffs in the back seat of Wakefield's patrol vehicle.

¶5     Wakefield drove Flaherty to the Lewis and Clark County Detention Center, where Flaherty submitted to a breath test using an Intoxilyer 5000 breath analysis instrument.  The Intoxilyer measured Flaherty's blood alcohol content (BAC) at .252.  Flaherty was charged with driving under the influence of alcohol (first offense), pursuant to § 61-8-401, MCA, and operating a noncommercial vehicle with a BAC of .10 or more ("DUI *per se*"), pursuant to

§ 61-8-406, MCA (2001).

¶6　　Flaherty was tried in Helena City Court, where he was convicted of DUI *per se*, pursuant to § 61-8-406, MCA (2001), and acquitted of driving under the influence of alcohol, pursuant to § 61-8-401, MCA. Flaherty appealed to the District Court for a trial *de novo*, and moved to suppress the results of the Intoxilyzer test. The District Court denied his motion to suppress by Decision and Order issued October 21, 2003. Flaherty pled guilty to DUI *per se*, reserving his right to appeal the denial of his suppression motion. From this denial, Flaherty timely appeals.

## STANDARD OF REVIEW

¶7　　The standard of review for evidentiary rulings is whether the district court abused its discretion. *State v. Fenton*, 1998 MT 99, ¶ 11, 288 Mont. 415, ¶ 11, 958 P.2d 68, ¶ 11 (citations omitted).

## DISCUSSION

¶8　　Did the District Court abuse its discretion when it denied Flaherty's motion to suppress the results of the Intoxilyzer 5000 test?

¶9　　Flaherty argues that the District Court erred when it denied his motion to suppress the results of the Intoxilyzer test because the test was not administered in compliance with Rule 23.4.212(7), A.R.M., which requires breath analyses to be performed according to the operational checklist for the particular analysis instrument being used. Flaherty claims the operational checklist required a 15-minute observation period, but he was at the Detention Center for only 12 or 13 minutes before the test was administered. He argues that prior to

3

his arrival, Wakefield could not have closely observed him to ensure that he did not put anything in his mouth, nor belch or regurgitate, because Wakefield was otherwise occupied driving his patrol vehicle while Flaherty was in the back seat, behind a partition. Flaherty also claims that after they arrived at the Detention Center, Wakefield spent several minutes at the opposite end of the hallway from where Flaherty was sitting, and actually left the room at one point. Flaherty notes that he was left in the company of a jailer, but argues that there is no evidence that the jailer was aware of the observation requirement. Thus, he concludes, he was not observed for 15 minutes prior to the administration of the Intoxilyzer test in such a manner as to comply with the requirements of the applicable A.R.M., and that this foundational failure should have precluded the State from entering the Intoxilyzer results into evidence.

¶10  The State responds that most of Flaherty's detention was recorded on videotape, and that it is clear from the tapes that Flaherty was always in the presence of police and/or detention officers. The State points out that while Flaherty is visible on the Detention Center's videotape for 12 or 13 minutes prior to the Intoxilyzer test, Wakefield's patrol car video indicates that after arrival at the Detention Center, they remained in the car for a few minutes while waiting for another DUI suspect to be processed. In addition, the walk from the vehicle to the location where Flaherty appears on the Detention Center's video took a minute or two. Thus, the State maintains that Flaherty was under observation for well over 15 minutes before the test was administered.

4

¶11    Flaherty directs our attention to *State v. Utz* (Idaho Ct. App. 1993), 867 P.2d 1001, in which the Idaho Court of Appeals held that an officer who leaves a suspect with jailers during the 15-minute observation period did not meet the foundational requirements for the test results to be admissible as evidence. He further points to several cases from Tennessee, in which that state's court held that the observation period must be strictly followed. *See, e.g., State v. McCaslin* (Tenn. Crim. App. 1994), 894 S.W.2d 310 (only 16 minutes of the 20-minute observation period occurred at the police station after the suspect was transported in a patrol car where a plexiglass barrier separated him from the officer); *State v. Korsakov* (Tenn. Crim. App. 2000), 34 S.W.3d 534 (while "an unblinking gaze" is not required, the officer must be watching the defendant rather than performing other tasks).

¶12    The State responds that the Tennessee cases ignore the practical realities of law enforcement, and that one of the functions of the video equipment is to allow an officer to perform such tasks as pat-downs and booking without jeopardizing the officer's effort to obtain a timely breath test result. The State further asserts that many other state courts have considered this issue and do not require as stringent a standard as does Tennessee. *See, e.g., Nasser v. State* (Ind. Ct. App. 1995), 646 N.E.2d 673 (officer left handcuffed suspect unattended in back of patrol vehicle for several minutes during the deprivation period); *Glassman v. State, Dept. of Revenue* (Colo. Ct. App.), 719 P.2d 1096 (officer completed paperwork and admitted he took his eyes off suspect "for a second" while working on forms); *McKown v. Director of Revenue* (Mo. Ct. App.), 908 S.W.2d 178 (officer watched suspect in his peripheral vision while he completed other tasks).

5

¶13 The District Court reviewed the videotapes from the Detention Center and the patrol car in determining whether the 15-minute observation period was properly observed. The court found that Wakefield observed Flaherty continually from the time he approached Flaherty's car until he placed Flaherty in the back seat of his patrol vehicle, and that while Flaherty was in the back seat, Wakefield observed him via the rear view mirror. The court further found that upon his arrival at the Detention Center, Flaherty was under observation by at least one detention officer, as well as by videotape. Noting that the entire time from the stop until Flaherty took the breath test well exceeded 15 minutes, the District Court concluded that the test complied with the observation requirements of the operational checklist referenced in Rule 23.4.212(7), A.R.M.

¶14 Every defendant is entitled to the protection of the procedural safeguards that are contained in Montana's administrative rules. *Fenton*, ¶ 16. However, as we noted recently in *City of Missoula v. Lyons*, 2004 MT 255, ¶ 17, 323 Mont. 67, ¶ 17, 97 P.3d 1120, ¶ 17, Rule 23.4.212(7), A.R.M., requires that the breath analysis be performed according to an operational checklist, and the operational checklist has changed since *Fenton* was decided. Our review of the record indicates that this newer version of the operational checklist was in use at the time of Flaherty's arrest. We know this because the operational checklist from Flaherty's arrest, signed by Wakefield, is part of the record and was, in fact, submitted to us by Flaherty as a supplemental exhibit to his Brief. At the time of Flaherty's arrest, the checklist in use did not require that the subject be observed for 15 minutes, *Fenton*, ¶ 15, but rather required "no oral ingestion of any material," as we pointed out in *Lyons*, ¶ 17.

6

¶15     The operational checklist requires that during the 15 minutes prior to testing, no oral ingestion of any material occurs; that the suspect be instructed to deliver a proper sample; and that the suspect be observed during sample delivery. We held in *Lyons* that the operational checklist does not require that the test administrator keep his eyes on the subject at all times, but requires observation during the actual testing. *Lyons*, ¶ 15. In Flaherty's situation, it is undisputed that he was observed during the actual testing, and the evidence clearly demonstrates that he did not orally ingest any material during the 15 minutes prior to the Intoxilyzer test.

¶16     We affirm district court decisions which reach the correct result regardless of the court's reasoning in reaching the decision. *Phillips v. City of Billings* (1988), 233 Mont. 249, 252, 758 P.2d 772, 774. Although the District Court based its conclusions on the premise that the operational checklist, and by extension the applicable A.R.M., required the suspect to be observed for 15 minutes prior to the Intoxilyzer test, the result reached is nonetheless correct in light of the current requirements of the operational checklist. Thus, the District Court did not abuse its discretion when it denied Flaherty's motion to suppress the result of the Intoxilyzer test.

## CONCLUSION

¶17     For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA O. COTTER

7

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS