No. 05-254

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 163

_____

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

DENNIS JAMES McGOWAN,

       Defendant and Appellant.

_____

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. BDC 2004-325
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

          Wendy Holton, Attorney at Law, Helena, Montana

       For Respondent:

          Hon. Mike McGrath, Attorney General; Carol E. Schmidt, Assistant
Attorney General, Helena, Montana

          Robert Wood, Helena City Prosecutor, Helena, Montana

_____

Submitted on Briefs:  March 22, 2006

Decided:  July 19, 2006

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Dennis McGowan (McGowan) appeals his conviction from the First Judicial District, Lewis and Clark County, for operating a motor vehicle with an alcohol concentration in excess of .08 in violation of § 61-8-406, MCA.  We affirm.

¶2    McGowan's appeal presents the following issue:

¶3    Whether the State presented sufficient evidence to support the jury's conviction of McGowan for the offense of driving a noncommercial vehicle with an alcohol concentration in excess of .08.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    Helena Police Officer Gary Herbst (Officer Herbst) pulled McGowan over at approximately 11:50 p.m. on October 20, 2003, for traveling 40 miles per hour in a 30 mile per hour zone.  Officer Herbst detected an odor of alcohol coming from inside the vehicle while speaking with McGowan.  He further noticed that McGowan moved slowly and deliberately and that he slurred his speech slightly.  Officer Herbst suspected McGowan of driving under the influence of alcohol and accordingly initiated a DUI investigation.

¶5    Officer Herbst asked McGowan whether he had consumed any alcohol that night.  McGowan admitted that he had consumed approximately five beers.  Officer Herbst then administered two physical field tests.  McGowan failed both the walk and turn test and the one-legged stand test.  McGowan agreed to take a portable breath test.  The portable breath test indicated the presence of alcohol in McGowan's system.  Officer Herbst

arrested McGowan for driving under the influence of alcohol based on the results of the physical field tests and the portable breath test.

¶6     Officer Herbst transported McGowan to the detention center and read him the implied consent law.  McGowan consented to a breath test on the Intoxilyzer 5000. Officer Herbst observed McGowan for the mandatory 15 minute deprivation period and administered the test at approximately 12:40 a.m., roughly 50 minutes after he first stopped McGowan.  The Intoxilyzer 5000 indicated that McGowan's breath alcohol concentration was .092.  Officer Herbst read McGowan his Miranda rights and McGowan then stated that he felt he was under the influence of alcohol.

¶7     The State charged McGowan with driving while under the influence of alcohol (DUI), in violation of § 61-8-401, MCA, driving with an alcohol concentration of .08 or more (DUI Per Se), in violation of § 61-8-406, MCA, and speeding, in violation of § 61-8-303, MCA.  The Helena City Court convicted McGowan of speeding and DUI Per Se following a bench trial on November 18, 2004.  McGowan appealed for a trial de novo in district court.  The District Court held a jury trial on March 14, 2005.  McGowan moved for a judgment of acquittal at the close of the State's case, arguing that the State had not proven beyond a reasonable doubt that his alcohol concentration was .08 or more at the time he was driving.  The District Court denied the motion.  The jury found McGowan guilty of DUI Per Se.  This appeal followed.

**STANDARD OF REVIEW**

¶8     We review a question on the sufficiency of the evidence to determine whether, in a light most favorable to the prosecution, any rational trier of fact could have found the

3

essential elements of the crime beyond a reasonable doubt. *State v. Field*, 2005 MT 181, ¶ 15, 328 Mont. 26, ¶ 15, 116 P.3d 813, ¶ 15.

## DISCUSSION

¶9 McGowan contends that the DUI Per Se statute requires the State to prove that his alcohol concentration was above .08 while he was driving. He asserts that the results of the Intoxilyzer 5000 test taken 50 minutes after he was initially pulled over cannot prove what his alcohol concentration was at the time he was driving. The State counters that it presented sufficient evidence for a jury to find that McGowan's alcohol concentration was in excess of .08 at the time of his stop.

¶10 Section 61-8-406, Montana's DUI Per Se statute, provides that "it is unlawful . . . for any person to drive or be in actual physical control of . . . a noncommercial vehicle upon the ways of this state open to the public while the person's alcohol concentration, as shown by analysis of the person's blood, breath, or urine, is 0.08 or more . . . ." Montana's DUI statute provides, in part, that the concentration of alcohol in a person's system may be determined by analysis of a sample of the person's breath taken "within a reasonable time after the alleged act . . . ." Section 61-8-401(4), MCA. The DUI statute therefore explicitly allows for law enforcement to determine a person's alcohol concentration a reasonable time after the alleged act, while the DUI Per Se statute refers only to a person's alcohol concentration while they are driving.

¶11 McGowan argues that the DUI Per Se statute's omission of "taken within a reasonable time after the alleged act" required law enforcement to determine his alcohol concentration at the time he was actually driving, rather than 50 minutes afterward. He notes that a person's alcohol concentration continues to rise for an unknown period of

4

time after they have stopped consuming alcohol, then plateaus and begins to decline. He maintains that his blood alcohol level could have been rising at the time Officer Herbst pulled him over. Accordingly, he argues that his alcohol concentration at the time he took the Intoxilyzer 5000 test could have been higher than it was 50 minutes earlier when he was driving. The State counters that we must read the DUI statutes together and conclude that the DUI Per Se statute allows evidence of alcohol concentration tests taken within a reasonable amount of time after the alleged act of driving with an alcohol concentration in excess of .08.

¶12 Section 61-8-404, MCA, outlines evidence that the State may admit against a person charged with DUI Per Se. That section provides, in part, that "evidence of any measured amount or detected presence of alcohol . . . in the person at the time of a test, as shown by an analysis of the person's blood or breath, is admissible." Section 61-8-404(1)(a), MCA.

¶13 Montana's implied consent law provides that a person who operates or is in actual physical control of a vehicle upon the ways of the state open to the public effectively consents to a test of their blood or breath for the purpose of determining any measured amount or detected presence of alcohol in their body. Section 61-8-402(1), MCA. An officer must administer a test or tests when the officer has reasonable grounds to believe that the person has been driving under the influence of alcohol and has placed that person under arrest for a violation of § 61-8-401, MCA. Section 61-8-402(2)(a)(i), MCA. A preliminary alcohol screening test administered in the field used to estimate the person's alcohol concentration does not satisfy a person's obligation to submit to a test under § 61-8-402, MCA. Section 61-8-409(2), MCA.

¶14 Therefore, if an officer has a particularized suspicion that a person has been operating a motor vehicle while under the influence of alcohol, the officer may administer a preliminary screening test to estimate the amount of alcohol in their system. Section 61-8-402, MCA. If the officer then determines to place the person under arrest for DUI, the officer must administer another blood or breath test to determine the amount of alcohol present in the person's system pursuant to § 61-8-402(2)(a)(i), MCA. The test required by § 61-8-402, MCA, is not a field test. Rather, the officer must administer this second test at a location approved for the administration of such tests by the Montana State Crime Lab, such as a detention center. Rule 23.4.215, ARM. Administrative rules further require law enforcement officers to observe a person for a fifteen minute deprivation period before administering a test on the Intoxilyzer 5000. Rule 23.4.212(7), ARM; *State v. Flaherty*, 2005 MT 122, ¶ 9, 327 Mont. 168, ¶ 9, 112 P.3d 1033, ¶ 9.

¶15 We construe, interpret and apply the law so as to avoid absurd results. *Prindel v. Ravalli Co*., 2006 MT 62, ¶ 33, 331 Mont. 338, ¶ 33, 133 P.3d 165, ¶ 33. We presume that the legislature would not pass meaningless legislation and we seek to harmonize statutes relating to the same subject so as to give effect to each. *Wild v. Fregein Construction*, 2003 MT 115, ¶ 20, 315 Mont. 425, ¶ 20, 68 P.3d 855, ¶ 20. Moreover, statutory construction should not lead to absurd results if a reasonable interpretation would avoid it. *Wild*, ¶ 20.

¶16 The statutory scheme for DUI offenses allows for the admission of Intoxilyzer 5000 results in DUI Per Se cases. Section 61-8-404, MCA. Indeed, if a law enforcement officer believes that a person has been driving under the influence of alcohol and determines to place the person under arrest for DUI pursuant to § 61-8-401, MCA, the

officer must administer a breath test, such as the Intoxilyzer 5000, at a detention center or other approved facility. Section 61-8-402(2)(a)(i), MCA; § 61-8-409(2), MCA; Rule 23.4.215, ARM. Further, an officer must observe the person for a fifteen minute deprivation period before administering the test. *Flaherty*, ¶ 9.

¶17 Reading § 61-8-406, MCA, to require law enforcement officers to determine a person's alcohol concentration while driving would lead to an absurd result, as it would be impossible for an officer to administer a test while the suspect was driving. Proper procedure requires an officer to pull the person over, observe the person and initiate a DUI investigation, determine to place a person under arrest based on the investigation, transport the person to a detention center or other approved testing facility, observe the person for the mandatory fifteen minute deprivation period, and then administer the breath test. Breath tests administered within a reasonable amount of time after the alleged act are therefore consistent with the DUI Per Se statute. Interpreting the DUI Per Se statute to allow for the admissibility of breath tests administered within a reasonable amount of time after the alleged act of driving while under the influence represents a reasonable interpretation of the statutory language, comports with the legislature's intent, and avoids an absurd result. *Wild*, ¶ 20.

¶18 The Dissent argues that the State should be required to prove evidence of a person's alcohol concentration at the time that they were driving through retrograde extrapolation evidence. Dissent, ¶ 31. Retrograde extrapolation represents the technique through which experts estimate alcohol concentration at some earlier time based on the test results at some later time. *Douthitt v. Texas* (Tex. App. 2004), 127 S.W.3d 327. The Dissent further points to cases from other jurisdictions that posit that tests taken after a

7

person has been driving do not accurately reflect the person's alcohol concentration while the person was driving. Dissent, ¶ 32.

¶19 At least one jurisdiction to which the Dissent cites, however, has changed course and now rejects the notion that the state needs to present retrograde extrapolation evidence to support convictions under DUI per se type statutes. In *Com. v. Yarger* (Pa. 1994), 648 A.2d 529, 531-32, the Supreme Court of Pennsylvania differentiated *Jarman*, the case cited by the Dissent, based upon Yarger's higher alcohol concentration and the shorter duration of time between his initial stop and the administration of the breath test. *Yarger*, 648 A.2d at 531. The court went on to hold, however, that the Commonwealth was not required to present expert evidence relating a driver's alcohol concentration back to the time he or she was driving to prove that a driver operated a vehicle with a blood alcohol content of 0.10% or greater. *Yarger*, 648 A.2d at 531. The court noted that the legislature amended the DUI per se statute after the commencement of Yarger's case to allow for the admission of tests taken within three hours after the person was driving. *Yarger*, 648 A.2d at 531, n.2. The court did not premise its holding, however, upon this legislative revision. *Yarger*, 648 A.2d at 531-32.

¶20 And in Texas, although no court has yet to hold explicitly that the state is not required to present retrograde extrapolation analysis testimony, several courts have admitted the results of alcohol concentration tests in the absence of such testimony. *See, e.g., State v. Mechler* (Tex. Crim. App. 2005), 153 S.W.3d 435; *Stewart v. State* (Tex. Crim. App. 2004), 129 S.W.3d 93. A number of other jurisdictions likewise have concluded that the state need not present retrograde extrapolation evidence to establish a person's alcohol concentration at the time they were driving under DUI per se type

8

statutes. *See, e.g., State v. Greenwood* (Tenn. Crim. App. 2003), 115 S.W.3d 527; *Com. v. Wirth* (Ky. 1996), 936 S.W.2d 78; *Haas v. State* (Fla. 1992), 597 So.2d 770; *State v. Kubik* (Neb. 1990), 456 N.W.2d 487; *Ransford v. District of Columbia*, (D.C. App. 1990), 583 A.2d 186; *State v. Taylor* (N.H. 1989), 566 A.2d 172; *State v. Tischio* (N.J. 1987), 527 A.2d 388; *State v. Keller* (Wash. App. 1983), 672 P.2d 412.

¶21    These jurisdictions recognize the impossible burden that requiring retrograde extrapolation evidence would place on the state. Retrograde extrapolation would require evidence that the state would rarely be able to acquire because of a defendant's constitutional right to remain silent. *Taylor*, 566 A.2d at 175. Specifically, the state would need to ascertain information wholly within the defendant's knowledge, such as when, and in what amounts, the defendant consumed alcohol before driving. *Taylor*, 566 A.2d at 175. Further, the rate of absorption of alcohol varies greatly among individuals, with studies indicating that a person reaches their peak blood alcohol level anywhere from 14 to 138 minutes after drinking. *Taylor*, 566 A.2d at 176. Additionally, the amount of food consumed by the defendant affects the rate of absorption. *Taylor*, 566 A.2d at 176. We therefore agree with other jurisdictions that have concluded that the legislature "could not have intended to place such impossible roadblocks in the way of the State in prosecuting [DUI per se] cases." *Taylor*, 566 A.2d at 176.

¶22    We must determine whether, in a light most favorable to the prosecution, the State presented sufficient evidence to allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Field*, ¶ 15. Based on the results of the Intoxilyzer 5000, we conclude that the State presented the jury with sufficient evidence to

determine that McGowan committed the offense of driving with an alcohol concentration above .08 in violation of § 61-8-406, MCA.

¶23 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice James C. Nelson dissents.

¶24 The Court violates one of the most elemental blackletter and jurisprudential laws of this State in its Opinion.

> In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.

Section 1-2-101, MCA; *City of Billings v. Gonzales*, 2006 MT 24, ¶ 13, 331 Mont. 71, ¶ 13, 128 P.3d 1014, ¶ 13.

¶25 Section 61-8-406, MCA, the DUI "*per se*" statute, provides:

> (1) It is unlawful and punishable as provided in 61-8-442, 61-8-722, 61-8-723, and 61-8-731 through 61-8-734 for any person **to drive** or be in actual physical control of:

(a) a noncommercial vehicle upon the ways of this state open to the public **while the person's alcohol concentration,** as shown by analysis of the person's blood, breath, or urine, is 0.08 or more . . . . [Emphasis added.]

The plain and unambiguous language utilized by the Legislature in this statute requires the measurement of alcohol concentration to relate to the time of driving.

¶26    To the contrary, however, the driving under the influence or DUI statute, § 61-8-401, MCA, provides, in pertinent part:

(1)  It is unlawful and punishable, as provided in 61-8-442, 61-8-714, and 61-8-731 through 61-8-734, for a person who is under the influence of:
(a) alcohol to drive or be in actual physical control of a vehicle upon the ways of this state open to the public;
. . . .
(4) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person at the time of a test, as shown by analysis of a sample of the person's **blood or breath drawn or taken within a reasonable time after the alleged act,** gives rise to the following inferences:
(a) If there was at that time an alcohol concentration of 0.04 or less, it may be inferred that the person was not under the influence of alcohol.
(b) If there was at that time an alcohol concentration in excess of 0.04 but less that 0.08, that fact may not give rise to any inference that the person was or was not under the influence of alcohol, but the fact may be considered with other competent evidence in determining the guilt or innocence of the person.
(c) If there was at that time an alcohol concentration of 0.08 or more, it may be inferred that the person was under the influence of alcohol.  The inference is rebuttable.  [Emphasis added.]

Unlike the *per se* statute, § 61-8-406, MCA, the DUI statute clearly and unambiguously allows the admission of evidence of alcohol concentration to be taken "within a reasonable time after the alleged act."

¶27 We need do nothing more in this case than follow the law as articulated by the Legislature and the rules of statutory construction set out in Title 1, Chapter 2, Montana Code Annotated. Indeed, it is this Court's "duty . . . to construe the law as it is written." *In re Estate of Magelssen* (1979), 182 Mont. 372, 378, 597 P.2d 90, 94 (citing § 1-2-101, MCA). Moreover, "[i]n the construction of a statute, the intention of the legislature is to be pursued if possible." Section 1-2-102, MCA. In ascertaining the Legislature's intent, "it is beyond dispute that . . . we are bound by [the] plain and unambiguous language used in a statute and may not consider legislative history or any other means of statutory construction." *McKirdy v. Vielleux*, 2000 MT 264, ¶ 22, 302 Mont. 18, ¶ 22, 19 P.3d 207, ¶ 22 (citing *MacMillan v. State Compensation Ins. Fund* (1997), 285 Mont. 202, 208, 947 P.2d 75, 78). "If no ambiguity exists in a statute, the letter of the law will not be disregarded under the pretext of pursuing its spirit." *Magelssen*, 182 Mont. at 378, 597 P.2d at 94 (citing *Vaughn & Ragsdale v. State Board of Equalization* (1939), 109 Mont. 52, 60, 96 P.2d 420, 424).

¶28 The Court's decision in the instant case is devoted primarily to justifying adding to the *per se* statute language which the Legislature chose not to use—that the measurement of alcohol concentration for purposes of the *per se* statute can be determined not while the person is driving, as that statute clearly requires, but rather, within a reasonable time after the stop.

¶29 The Court, again in justification of its violation of the rules of statutory construction, posits that to not add language to the statute would produce "absurd results" and implies that the Legislature passed "meaningless legislation." Neither is true. In

point of fact, it is possible for the State to provide, by retrograde extrapolation, evidence of a person's blood alcohol concentration at the time of driving.

¶30 In this case, the State did not offer such evidence. Unfortunately, this Court seems to feel it necessary to save the State from its own failure to present sufficient evidence at trial supporting the charge made against McGowan.

¶31 Here, the critical element of the State's case was McGowan's blood alcohol concentration at the time he was driving. The only evidence presented was that his blood alcohol concentration fifty minutes after he was driving was 0.092%. The State presented no evidence relating McGowan's blood alcohol concentration back to the time he was driving his vehicle. Accordingly, it is not known whether his alcohol concentration was higher, lower, or the same as at the time he was driving his vehicle. Without that information, under the plain language of the *per se* statute, there was not sufficient evidence to support the verdict. McGowan's *per se* conviction should be reversed.

¶32 In his brief on appeal, McGowan cites persuasive authority from sister jurisdictions in support of his argument that, under a *per se* type statute requiring the determination of alcohol concentration at the time of driving, tests after that time do not accurately reflect the content of blood alcohol concentration at the time of driving. *See, e.g., Commonwealth v. Jarman* (Pa. 1992), 601 A.2d 1229; *Conrad v. State* (Alaska Ct. App. 2002), 54 P.3d 313; *Douthitt v. State* (Tex. Ct. App. 2004), 127 S.W.3d 327.

¶33 In *Conrad*, the court stated:

> It appears that the Alaska Legislature would have the authority to define the offense in terms of the defendant's test result at a test administered within a specified time after the defendant operated or

controlled a motor vehicle—even though the test result might be higher than the defendant's blood alcohol level at the time the defendant operated or controlled the vehicle. Our review of case law and statutes from other jurisdictions reveals that a number of state legislatures have done this.

In these states, however, the statutes clearly specify that a defendant's guilt rests on the test results and that the defendant's actual breath or blood alcohol content at the time of driving is not an element.

*Conrad*, 54 P.3d at 315 (footnote omitted).

¶34 Similarly, in *Douthitt*, the court observed:

[A] drinker's alcohol concentration describes a curve that rises as the alcohol is absorbed, peaks at some point after drinking stops, and then declines as the alcohol is eliminated. If a driver is tested for alcohol concentration while he is still in the absorption phase, his alcohol concentration will be higher than it was when he stopped driving. If he is in the elimination phase when tested, his alcohol concentration could be either higher or lower than while driving, depending on when he reached his peak concentration. The greater the time between driving and the test, the greater the potential variation between the alcohol concentration when driving and the subsequent test result.

*Douthitt*, 127 S.W.3d at 333 (internal citations omitted).

¶35 Our sister courts are obviously willing to do what we are unwilling to do—simply enforce the plain language of Montana's *per se* statute and not read into it language from our DUI statute. Montana's blackletter and jurisprudential law directs that we simply ascertain and declare what is in terms or in substance contained in the *per se* statute and not to insert language which has been omitted from it. Section 1-2-101, MCA.

¶36 The majority asserts that at least one of the jurisdictions to which this dissent cites has changed course and now rejects the notion that the State needs to present retrograde extrapolation evidence to support convictions under DUI *per se* type statutes. The case the majority cites for this proposition is *Commonwealth v. Yarger* (Pa. 1994), 648 A.2d 529.

¶37    In *Yarger*, the Supreme Court of Pennsylvania did hold that the state was not required to present expert testimony as to the defendant's blood alcohol level while driving. The court noted that the blood alcohol level of the defendant in *Yarger* was 0.18%, significantly above the 0.10% threshold, and that the lapse of time between when the defendant was driving and when he submitted to the test was only forty minutes. The court determined that these two factors distinguished this case from previous cases where extrapolation evidence was required. *Yarger*, 648 A.2d at 531.

¶38    In addition, the court in *Yarger* noted that the statute relied on in that case had been amended between the time of the offense and the court's decision. *Yarger*, 648 A.2d at 531 n.2. Unlike Montana's DUI *per se* statute, the amended Pennsylvania statute provides that the test may be obtained within three hours after the person drove, operated or was in actual physical control of the vehicle. 75 Pa.C.S. § 3731(a)(5). Hence, there was no reason for the *Yarger* court to read into the Pennsylvania statute information that it did not contain as the majority attempts to do in *McGowan*.

¶39    The majority asserts that the Pennsylvania Supreme Court did not premise its holding in *Yarger* upon this legislative revision. While it is true that the *Yarger* court did not *state* that it premised its holding on the legislative revision, it is also true that the court did not state that it totally disregarded the legislative revision. Because the court made a point of mentioning the legislative revision in its decision, it is impossible to tell how much influence the legislative revision had on the court's decision.

¶40    Furthermore, in response to this dissent's citation to *Doutthit*, the majority concedes that no court in Texas has yet to hold explicitly that the state is not required to present retrograde extrapolation analysis testimony. Nevertheless, the majority states that

15

several Texas courts have admitted the results of alcohol concentration tests in the absence of such testimony. One such case cited by the majority is *Stewart v. State* (Tex. Crim. App. 2004), 129 S.W.3d 93. In *Stewart*, the Texas Court of Criminal Appeals did reverse a lower court ruling that breath test results are inadmissible without retrograde extrapolation evidence. However, the majority fails to mention that in so holding, the court in *Stewart* noted that it reversed the lower court on the basis of relevancy, not on the sufficiency of the evidence necessary to sustain a conviction. Stewart, 129 S.W.3d at 98. As the concurring opinion in *Stewart* states,

> because of the peculiar posture of this appeal, [*Stewart*] does not resolve the problem that faces trial courts: whether to admit breath-test results without extrapolation evidence. This appeal presents only half of the problem, relevancy. . . . [T]here are serious issues about the other half, weighing the relevancy value against possibly unfair prejudicial effect.

*Stewart*, 129 S.W.3d at 98 (Womack, J., concurring).

¶41    While the majority cites a few cases from various jurisdictions supporting the proposition that the use of retrograde extrapolation evidence is not necessary, there are jurisdictions that still require the introduction of retrograde extrapolation evidence. In *State v. Ladwig* (S.D. 1989), 434 N.W.2d 594, the trial court denied the defendant's motion to dismiss the charges against him on the ground that the State failed to introduce sufficient evidence to establish that he had been driving with a blood alcohol content of 0.10% or more. On appeal, the Supreme Court of South Dakota reversed the trial court because the State

> failed to establish that [the defendant's] blood alcohol content was 0.10 percent or greater *at the time he was driving* his vehicle. Rather, State merely produced evidence of [the defendant's] blood alcohol content *at the time his blood was drawn* without any attempt to extrapolate or relate the test results back to the time he was driving.

16

*Ladwig*, 434 N.W.2d at 595-96 (emphasis in original).

¶42 Likewise, in *State v. Rollins* (Vt. 1982), 444 A.2d 884, 886-87, the Supreme Court of Vermont stated:

> [T]o fulfill its burden of proof, the prosecution must do more than offer the requisite chemical test. The State must also establish that the .10% level existed at the time of operation. In this case, it was incumbent upon the prosecution to relate back the .24% reading from 9:14 p.m. (time of the test) to 7:45 p.m. (last time of operation). Thus, any evidence relevant to whether the 9:14 p.m. reading accurately reflected the defendant's blood alcohol level at 7:45 p.m. was not only admissible, but indispensable to the prosecution's case.

¶43 Finally, rather than reading into Montana's DUI *per se* statute provisions that are not there, a better approach would be that of the Arizona Supreme Court who continued to require retrograde extrapolation evidence until the Arizona legislature amended its motor vehicle statutes to allow for the admissibility of BAC tests taken within two hours of driving. Prior to the amendment of the statute, the Arizona Supreme Court held that the results of an intoxilyzer test taken within a reasonable time after arrest were admissible to show the *presence* of alcohol in the blood, but not the *percentage*. *Desmond v. Superior Court of Maricopa County* (Ariz. 1989), 779 P.2d 1261, 1266-67. To apply the statutory presumption that the driver was under the influence of intoxicating liquor if the percentage of alcohol concentration in his blood or breath exceeded 0.10%, the court determined that there must be testimony relating the BAC back to the time of the arrest. *Desmond,* 779 P.2d at 1267.

¶44 The majority does a yeoman's job of explaining all the reasons why retrograde extrapolation is too hard, too inconvenient or will not, otherwise, work. If that is true, then the solution is simple. Interpret the statute *as it is written* and let the branch of the

government that wrote the legislation rewrite and fix the offending language. It is this kind of activism that gives traction to those who criticize courts as acting as super-legislatures. It is precisely what the majority have done here.

¶45   By reason of our unwillingness to follow the law, I dissent.

/S/ JAMES C. NELSON

Justice Patricia Cotter joins in the foregoing dissent of Justice James C. Nelson.

/S/ PATRICIA COTTER