*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 13, 2020

Plaintiff-Appellee,

v

No. 344840
Wayne Circuit Court
LC No. 17-002443-01-FH

ROBERT MICHAEL CRAIG,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of operating a motor vehicle while intoxicated (OWI), third offense, MCL 257.625(1); MCL 257.625(9)(c), and operating a motor vehicle while license suspended, revoked, or denied, MCL 257.904(1); MCL 257.904(3)(a). On appeal, defendant only challenges his conviction of operating a motor vehicle while intoxicated. We affirm.

## I. UNDERLYING FACTS

In the early afternoon of November 4, 2016, defendant was pulled over by then-Northville Police Officer Kyle Smith after Officer Smith was dispatched for a possible drunk driver. Although defendant did not initially pull over when Officer Smith activated his lights and emergency siren, defendant eventually came to a stop after slowly rolling past a stop sign. Officer Smith, who was soon joined by Northville Police Officer Brian Dogonski, had defendant exit his vehicle and perform several field sobriety tests. Those tests included a horizontal gaze nystagmus (HGN) test,[1] alphabet and counting tests, which required defendant to say his English alphabet

---

[1] "Horizontal gaze nystagmus is the inability of the eyes to maintain visual fixation as they move from left to right." *People v Berger*, 217 Mich App 213, 215; 551 NW2d 421 (1996). To perform the HGN test, "the subject holds the head still and covers or closes one eye while focusing the other on an object (e.g., a pen) held at eye level." *Id.* "As the object is gradually moved out of the

from C to X and to count backward from 99 to 77 while tilting his head back and closing his eyes, as well as standing and walking tests that are not the subject of the instant appeal. Officer Smith testified that, on the basis of defendant's performance of the HGN test, he believed defendant had intoxicants in his blood. Additionally, with respect to the alphabet and counting tests, defendant said letters and numbers out of order and said things that Officer Smith could not understand. Officer Smith also believed that defendant's performance on these tests established defendant was under the influence of alcohol. Officer Smith additionally asserted defendant smelled of alcohol, but defendant denied having consumed any alcohol that day. Officer Smith administered a preliminary breath test to defendant, with a result of 0.16. Officer Smith arrested defendant for operating a vehicle while intoxicated and took him to the Northville Township Police Department.

Once at the Northville Township Police Department, Officer Smith administered a DataMaster breathalyzer test to defendant to determine his blood alcohol content. Officer Smith testified that, in accordance with administrative regulations governing such breath tests, he observed defendant for 15 minutes before administering the test to ensure defendant did not smoke, put anything in his mouth, or regurgitate before the test. After observing defendant for 15 minutes, Officer Smith gave defendant the breathalyzer test. Officer Smith administered the test twice, the first test resulted in a 0.15 blood alcohol content reading and the second test resulted in a 0.14 blood alcohol content reading.

Defendant was convicted after a bench trial. This appeal followed.

## II.  MOTIONS TO SUPPRESS

## A.  STANDARD OF REVIEW

"We review for clear error a trial court's findings of fact in a suppression hearing, but we review de novo its ultimate decision on a motion to suppress." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted). "The decision whether to admit evidence is within a trial court's discretion. This Court reverses it only where there has been an abuse of discretion." *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *Johnson*, 502 Mich at 564. Furthermore, "[a] trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566-567; 876 NW2d 826 (2015). "To the extent that the trial court's ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *People v Tanner*, 496 Mich 199, 205; 853 NW2d 653 (2014) (quotation marks and citation omitted).

---

subject's field of vision toward the ear, the officer is to look for involuntary jerking of the eyeball when it tracks the object." *Id*. The officer then repeats the test with the other eye. *Id*. "The onset of nystagmus is the indicator for alcohol intoxication." *Id*. (citation omitted).

This Court reviews for an abuse of discretion a trial court's decision to qualify a witness as an expert and to admit a witness's testimony. *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). A trial court's decision to conduct a *Daubert*[2] hearing is reviewed by this Court for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-218; 749 NW2d 272 (2008).

## B. BREATHALYZER DAUBERT CHALLENGE

### 1. WAIVER

Waiver is "the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (citation and quotation marks omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (citation and quotation marks omitted).

The prosecution argues that defendant waived any argument relating to admission into evidence of the DataMaster breathalyzer test because defendant's trial attorney stated "[n]o objection" when the results of the breathalyzer test were offered at trial. The prosecution's argument, however, ignores the fact that before trial began defendant filed two motions to suppress evidence from the DataMaster breathalyzer test. Furthermore, before any testimony or opening statement was made on the first day of trial, defendant and the prosecution agreed that the trial judge should defer ruling on defendant's pretrial evidentiary motions until the conclusion of trial. Consequently, defendant did not intentionally relinquish a known right when his trial attorney stated "[n]o objection" in response to the prosecution's offer of the breathalyzer test results into evidence, given the parties earlier agreement; that issue has been properly preserved.[3] Thus, defendant did not waive the issue of the breathalyzer test's admissibility.

### 2. MERITS ANALYSIS

Defendant argues that in failing to order a hearing under *Daubert* regarding the reliability of the DataMaster breathalyzer machine, the trial court abused its discretion. Defendant also argues that that the trial court erred in concluding that defendant, rather than the prosecution, had the burden of proof to establish the reliability of the device. We disagree.

As a general matter, "The proponent of evidence bears the burden of establishing its relevance and admissibility." *People v Martin*, 271 Mich App 280, 316; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). Also, as a general matter, the proponent must prove admissibility by a preponderance of the evidence. *People v Jones*, 270 Mich App 208, 217; 714 NW2d 362 (2006).

---

[2] *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

[3] While it does not affect our analysis on this issue, we additionally note that the trial court ruled on defendant's pretrial evidentiary motions, including the motions about the breathalyzer test, at the conclusion of trial.

However, the Michigan Legislature, in enacting MCL 257.625a(6)(a), has eliminated the general rule regarding the foundation needed for admission of chemical test results of a person's breath:

> (6) The following provisions apply to chemical tests and analysis of a person's blood, urine, or breath, other than a preliminary chemical breath analysis:
>
> (a) The amount of alcohol or presence of a controlled substance or other intoxicating substance in a driver's blood or urine or the amount of alcohol in a person's breath at the time alleged as shown by chemical analysis of the person's blood, urine, or breath is admissible into evidence in any civil or criminal proceeding and is presumed to be the same as at the time the person operated the vehicle. [MCL 257.625a(6)(a).]

"To be admissible, chemical test results must be both relevant and reliable." *People v Fosnaugh*, 248 Mich App 444, 450; 639 NW2d 587 (2001). In *People v Campbell*, 236 Mich App 490, 506; 601 NW2d 114 (1999), this Court interpreted the implied consent statute, MCL 257.625a, in the context of a challenge regarding whether the test was performed within a reasonable time. This Court concluded that "the implied consent statute and the policy regarding drinking and driving support the conclusion that the only prerequisite to admission of blood alcohol test results is a threshold relevancy requirement, as codified in MRE 401, 402, and 403." *Id*. at 506. This Court further stated:

> Although the Legislature could, of course explicitly require that chemical tests be administered within a specific amount of time, or that the prosecutor set forth specific evidence as a prerequisite to admission, it did not do so here. Absent clear statutory language requiring a greater prosecutorial burden in admitting chemical tests of blood alcohol, and considering the clear purpose of statute, we believe that a necessary inference is that the Legislature did not authorize such a burden. A requirement that the prosecution set forth preliminary evidence showing the reliability of the test results . . . would potentially frustrate the statute's purpose by imposing an additional burden on the prosecutor in OUIL cases. [*Id*. at 499.]

Thus, MCL 257.625a(6)(a) makes the evidence of defendant's DataMaster breathalyzer test results admissible against defendant, given the obvious relevance of defendant's blood alcohol level. The enactment of MCL 257.625a(6)(a) demonstrates an implicit acknowledgment by the Michigan Legislature that breathalyzer test results are highly probative. Although defendant argues that the prosecution had to prove that the specific DataMaster device used to test his blood alcohol content was reliable and that the trial court erred by making defendant prove that the device was unreliable, the language of MCL 257.625a(6)(a) includes no such requirement. Consequently, the prosecution was not required to present specific evidence regarding the reliability of the testing device. Because the Michigan Legislature has determined that DataMaster breathalyzer results are valid and reliable, the trial court did not err in declining to order a *Daubert* hearing regarding the reliability of the DataMaster breathalyzer machine.

## C. COMPLIANCE WITH ADMINISTRATIVE REGULATIONS

Defendant argues that the trial court erred when it concluded that defendant's breath test complied with the applicable administrative rules and that it should have suppressed the breathalyzer test results. We disagree.

Mich Admin Code, R 325.2655(1)(e) addresses the procedure police officers must follow before administering a breath alcohol analysis on an evidential breath alcohol test instrument such as the DataMaster breathalyzer:

> A person may be administered an evidential breath alcohol analysis on an evidential breath alcohol test instrument only after being observed for 15 minutes before collection of the breath sample by at least 1 appropriate class operator who is certified in accordance with R 325.2658. The observation period may be conducted by more than 1 operator working in concert. During the observation period, the person shall not have smoked, regurgitated, or placed anything in his or her mouth, except for the mouthpiece associated with the performance of the evidential breath alcohol analysis. The operator need not stare continuously at the person, but must be close enough to be aware of the person's actions and conditions. The operator may complete paperwork, enter data into the evidential breath alcohol test instrument, or conduct other reasonable tasks during the observation period provided the person is within the operator's field of vision. Breaks in the observation period lasting only a few seconds do not invalidate the observation provided the operator can reasonably determine that the person did not smoke, regurgitate, or place anything in his or her mouth during the breaks in the observation. [Rule 325.2655(1)(e).]

This Court has held that "there is no bright-line rule of automatic suppression of evidence where an administrative rule has been violated." *People v Wujkowski*, 230 Mich App 181, 187; 583 NW2d 257 (1998) (citation omitted). Instead, "suppression of test results is required only when there is a deviation from the administrative rules that call into question the accuracy of the test." *People v Fosnaugh*, 248 Mich App 444, 450; 639 NW2d 587 (2001).

The trial court did not abuse its discretion in admitting the DataMaster breathalyzer results. Under the administrative regulations, Officer Smith had to observe defendant for 15 minutes before he administered the breathalyzer test to defendant. Rule 325.2655(1)(e). Officer Smith testified that he complied with this requirement and watched defendant during the entire 15-minute observation window. Officer Smith removed everything from defendant's person before he began the observation window, so defendant could not have put any objects into his mouth. Defendant claims that in the 15-minute observation window, he wiped his mouth multiple times, possibly belched during the observation period, and belched after he took the second test. Video of defendant shows that throughout the 15-minute window, he rubbed his upper lip, nose, eyes, face, and neck with his hands, and occasionally rested his hand on his chin, neck, or brow. Additionally, at 2:40:25 p.m., approximately 25 to 30 seconds after the second test was completed, defendant belched. However, as the trial court recognized, the administrative rules do not say anything about belching or wiping one's mouth during the observation period. See Rule 325.2655(1)(e). Because the surveillance video of the booking area and Officer Smith's testimony demonstrates that the

administrative regulations were complied with, the trial court did not err in admitting the DataMaster breathalyzer test results into evidence.

## D. THE HORIZONTAL GAZE NYSTAGMUS TEST

Defendant argues that the trial court erred when it allowed the HGN test results into evidence because the evidence below did not establish that Officer Smith complied with the standards for administering the HGN test. We agree, but find any such error was harmless.

In *People v Berger*, 217 Mich App 213, 217-218; 551 NW2d 421 (1996), this Court held that the prosecution need not present expert testimony about the validity of the HGN test and that the "only foundation necessary for the introduction of evidence regarding the HGN test in Michigan is evidence that the test was properly performed and that the officer administering the test was qualified to perform it."

The trial court erred when it admitted the results of the HGN tests into evidence. Officer Smith acknowledged the possibility that he may not have performed the HGN test properly. The trial court concluded that the ambiguity in Officer Smith's testimony about whether he performed the HGN test properly went to the weight of the evidence, rather than its admissibility. However, in *Berger*, this Court held that as a prerequisite to admissibility, the prosecution must demonstrate that the test was performed properly and that the officer administering the test was qualified to perform it. *Berger*, 217 Mich App at 217-218; see also MRE 104(a). The trial court was incorrect in concluding that whether Officer Smith performed the HGN test properly went to the weight of the evidence. *Berger* makes clear that admissibility of the HGN test results depends, in part, on whether the test was performed properly. *Id*. Officer Smith admitted it was possible that he did not perform the HGN test properly and his report, which was read into evidence during trial, does not discuss two of the three steps of the HGN test. Because Officer Smith admitted he may not have properly performed the HGN test, the *Berger* requirements were not satisfied. As an error of law, the trial court's decision to admit the evidence necessarily constituted an abuse of discretion.

Although the trial court erred in admitting the results of the HGN test into evidence, nevertheless that error was harmless.

This Court presumes nonconstitutional preserved errors to be harmless, and it is the defendant's burden to show that the error resulted in a miscarriage of justice. *People v Hawthorne*, 474 Mich 174, 181; 713 NW2d 724 (2006). Reversal is required only if it is more probable than not that the error affected the outcome. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks and citation omitted).

The trial court's error in admitting the results of the HGN test into evidence was harmless because there was substantial evidence of defendant's intoxication while operating his vehicle. Steve Herman, the owner of a repair shop where defendant left a vehicle for storage, testified that defendant came into his auto repair shop and, on the basis of defendant's behavior, the smell of alcohol on defendant, and red stains on his clothes and lips, Herman could tell that defendant had

been drinking alcohol that day. Officer Smith testified that he saw defendant turn without signaling, drive through a stop sign without stopping, continue driving despite Officer Smith activating his emergency lights and siren, slowly roll through another stop sign, and come to a stop in an intersection. After defendant stepped out of his vehicle, Officer Smith could smell alcohol on defendant's person. During the video of defendant's traffic stop and arrest, defendant performed a preliminary breath test, resulting in a 0.16 blood alcohol content reading. Additionally, the results of the DataMaster breathalyzer test administered to defendant at the Northville police station established that his blood alcohol content was 0.14 and 0.15, which is above the 0.08 legal limit. Further, the testimony of several hospital employees establish that defendant admitted consuming several alcoholic beverages before he drove that morning. Given the evidence that defendant was under the influence of alcohol and that his blood alcohol level was above the legal limit while driving, the trial court's error in admitting the HGN test results was not outcome-determinative. As a result, any error was harmless. *Burns*, 494 Mich at 110.

## E. NONSTANDARDIZED FIELD SOBRIETY TESTS

Defendant argues that the trial court further erred when it admitted nonstandardized field sobriety test results into evidence without determining whether the tests met the *Daubert* standard. Although the trial court failed to determine whether the nonstandardized field sobriety tests were reliable, any such error on the part of the trial court was harmless.

MCL 257.625s discusses the admissibility of standardized and nonstandardized field sobriety tests. It provides:

> A person who is qualified by knowledge, skill, experience, training, or education, in the administration of standardized field sobriety tests, including the horizontal gaze nystagmus (HGN) test, shall be allowed to testify subject to showing of a proper foundation of qualifications. *This section does not preclude the admissibility of a nonstandardized field sobriety test if it complies with the Michigan rules of evidence*. [MCL 257.625s (emphasis added).]

MRE 702 and MRE 703 cover scientific evidence and expert witnesses, stating:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. [MRE 702.]

> The facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence. This rule does not restrict the discretion of the court to receive expert opinion testimony subject to the condition that the factual bases of the opinion be admitted in evidence thereafter. [MRE 703.]

Under these rules, a court considering whether to admit expert testimony or scientific evidence under MRE 702 "acts as a gatekeeper and has a fundamental duty to ensure that the proffered" evidence is both relevant and reliable. *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012).

The trial court erred when it failed to address whether defendant's nonstandardized field sobriety test results were reliable despite defendant's request for a *Daubert* hearing. Although the trial court made a finding that the evidence of defendant's performance on the nonstandardized field sobriety tests was relevant to whether defendant was under the influence of alcohol at the time of the traffic stop, the trial court did not address whether the tests themselves, as adjusted, were reliable. *Kowalski*, 492 Mich at 120. Because the trial court failed to comply with its "fundamental duty" to ensure that the proffered scientific evidence was reliable, the trial court erred.

Despite the fact that the trial court erred in failing to address whether the nonstandardized field sobriety tests at issue met the *Daubert* standard, any failure by the trial court to hold a *Daubert* hearing was harmless for the same reasons addressed earlier in Part II(D) regarding the trial court's admission of the HGN test results. Given the evidence that defendant was under the influence of alcohol and that his blood alcohol level was above the legal limit while driving, the trial court's error in failing to hold a *Daubert* hearing was not outcome-determinative. As a result, reversal is not required because the error was harmless. *Burns*, 494 Mich at 110.

## III. RELIABILITY OF THE DATAMASTER

## A. PRESERVATION AND STANDARD OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objections that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 116; 631 NW2d 67 (2001). Defendant now argues for the first time on appeal that the breathalyzer test results should have been suppressed because there was no testimony that administrative regulations relating to the calibration of the breathalyzer machine were complied with. Defendant concedes that this specific argument was not made below and, as a result, the issue is unpreserved. We agree that the issue is unpreserved.

Unpreserved issues are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings

independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

In the instant context, prejudice "requires a showing . . . that the error affected the outcome of the lower court proceedings." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014) (quotation marks and citation omitted).

## B. ANALYSIS

Defendant argues that the prosecution was required to show that the particular DataMaster breathalyzer device used to test him was reliable, and that calibration tests were performed on it. We disagree.

As discussed above, the Legislature did not include a requirement that the prosecution "set forth specific evidence as a prerequisite to admission" of breath test results. *Campbell*, 236 Mich App at 499. Because the Legislature did not impose such a burden on the prosecution, the trial court did not err in admitting the breath test results.

Defendant additionally argues that his trial counsel was ineffective for failing to make this argument at the trial court level. Defendant, however, failed to identify his ineffective assistance of counsel claim in his statement of the questions presented. Consequently, defendant has waived the issue. *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011).

## IV. CONCLUSION

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel